HAYES-THOMAS GRAIN COMPANY v. A. F. WILCOX
CONTRACTING COMPANY.

Opinion delivered July 5, 1920.

1. PARTNERSHIP—WHEN CREATED.—A contract whereby two partners agreed to furnish certain equipment and to finance a contracting corporation in constructing a street improvement, the parties agreeing to share the profits on specified terms, *held* to create a partnership between the partners and the corporation.

2. PARTNERSHIP—LIABILITY OF PARTNERS.—Individuals who entered into a partnership agreement with a corporation are liable on a partnership debt contracted by it in furtherance of the purposes for which the corporation was organized, and can not take advantage of the fact that the contract was beyond the powers of the corporation.

3. GARNISHMENT—FUNDS OF IMPROVEMENT DISTRICT.—Funds paid by an improvement district as earnings of a street improvement contractor under a contract with the district were subject to garnishment in equity, though the suit was originally brought at law.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; reversed.

*Mehaffy, Donham & Mehaffy*, for appellant.

1. As to the liability of the Vinsant Company, the matter is settled by the case of 93 S. W. 427. The contract was one of partnership. *Ib.* It was a joint enterprise with a division of profits and clearly a partnership. 211 S. W. 148; 93 *Id.* 427; 80 Ark. 23; 87 *Id.* 412; 63 *Id.* 518; 44 *Id.* 427; 145 U. S. 611; 64 S. W. 1007; 9 Leigh 424; 45 S. E. 371; 22 N. W. 809; 89 Fed. 140; 48 S. W. 548. The Vinsant Company was clearly liable. 93 Ark. 346; 107 *Id.* 118; 46 *Id.* 132; 49 *Id.* 457; 121 *Id.* 705-711. It was not only a partner engaged in the joint enterprise, but it finally took charge of the business and all the property and thereby made itself liable. 136 J. 243; 233 Fed. 231; 142 U. S. 396; 170 Fed. 240. See also 2 Ark. 370; 19 *Id.* 671; 26 *Id.* 360; 31 N. E. 44; 68 S. W. 936; 113 N. E. 337; 2 Elliott on Cont., § 1358; 13 C. J. 714.

2. There is really no contention as to the right of the equitable garnishee in this case as the garnishment

was improper.   31 Ark. 387; 22 Minn. 452; 56 Ark. 476; 90 *Id.* 236; 107 *Id.* 189.   The garnishment and attachment should be sustained.

*D. K. Hawthorne,* for appellee, Vansant Company.

1.   The contract did not create a partnership, and the court below properly so held.   211 S. W. 148; 54 Ark. 384; 207 *Id.* 221; 63 Ark. 518; 80 *Id.* 23; 87 *Id.* 412.

2.   The contracting company being a corporation, could not form a partnership with the construction company.   95 Ark. 1; *Ib.* 368.   See also as to no partnership. 54 Ark. 384; 44 *Id.* 423.   Mere participation in the profits is not sufficient to create a partnership.   *Ib.*   It is a question of intention, and there must be an agreement from which a community of profit and loss arises.   91 Ark. 26; 30 Cyc. 372-3; 18 L. R. A. (N. S.) 975-1055.

McCulloch, C. J.   Appellee A. F. Wilcox Contracting Company, a foreign corporation domiciled at Kansas City, Missouri, entered into a contract with a street improvement district in Little Rock to construct the improvement authorized by the organization of the district.   Appellees J. R. Vansant and A. J. Rector are copartners doing business under the trade name of J. R. Vansant Construction Company, and they entered into a contract with appellee A. F. Wilcox Contracting Company (hereinafter referred to as the Contracting Company) which recited the contract between the Contracting Company and the improvement district and which provided in substance, that the Construction Company would finance the Contracting Company in the performance of said contract and assist the latter by furnishing bond to guarantee performance of the contract and to advance such sums of money to pay all bills incurred during the progress of the work for labor and materials; and the Contracting Company agreed to indemnify the Construction Company against losses in the performance of said contract, and further agreed to diligently construct the improvement in accordance with the contract with the district.

The clause of the contract providing compensation reads as follows: ''For and in consideration of the Construction Company advancing said money and assuming the risks and obligations connected hereto and to the extent as hereinafter stated, and to aid and assist in performing said work as hereinafter designated, the corporation agrees to pay the Construction Company all the net profits accruing from said work up to and including the sum of $3,000, and it is further agreed that if the net profits from the performance of said work shall equal or exceed $9,000, then the Construction Company shall have and receive one-third of the entire profits accruing therefrom.''

There is another provision in the contract which defines the net cost of the work and the profits, by specifying that the following items should be considered as a part of the cost of construction:

''First: The actual cost of labor employed on the job, exclusive of any overhead expenses.

Second: The actual cost of material used on this job.

Third: The actual cost of indemnity and maintenance bond and employer's liability.

Fourth: Reasonable up-keep and necessary repairs of the equipment made on the job. It being further understood by all parties hereto that the equipment now owned and intended to be used by the corporation on said job shall be and is now in good serviceable condition.

Fifth: The freight and labor necessary to transport the equipment to the place where said work is to be performed. It being understood that if the equipment referred to herein is used for other jobs in the vicinity of the work contemplated by this contract and the Construction Company has no interest therein, then there shall be a proper adjustment of the freight and labor items herein mentioned and a proper refund made to the Construction Company. It being further agreed that if the equipment is shipped back to Kansas City upon the

completion of this job, that the freight and labor necessary so to do shall be charged as an item of expense against said job.

Sixth: The lump sum of $1,600 which represents and is intended to cover the overhead charges of the corporation in the performance of said work.

Seventh: The sum of $200 which item represents the overhead charges of the Construction Company on said work.

The last two items are to be paid to the respective parties only upon the completion of the work. The above items of overhead expenses have been arrived at with the understanding and agreement that the work required of the corporation can be fully performed in a period of six months from the time said work actually began. If, however, the contract of the city shall be altered in such a manner as to require a longer period than six months for the full performance of said work, then said items of overhead expense shall be increased in proportion to the time actually required for the full performance of said contract.''

There is a further provision that A. F. Wilcox should give his personal attention to the supervision of the job of work specified in the contract with the improvement district and that the Construction Company ''shall have the right to inspect the books of the corporation at all times, insofar as they refer to this work and shall have the right to investigate working conditions of the men, purchase of material, employment of labor and shall have the right to be fully informed as to all sub-contracts and be kept at all times fully acquainted with the conditions of said work and shall be kept fully informed as to the manner in which said work is being discharged and said contract is being fulfilled. Should the Construction Company be able to purchase material and labor at a lower price or suggest methods of handling the work more economically, said suggestions are to be taken into consideration and acted upon by the corporation.''

This contract was entered into between the parties on December 12, 1917, and the Contracting Company proceeded with the construction of the improvement.

During the months of July, August and September of the year 1918, appellant, a corporation engaged in the grain and feed business in the city of Little Rock, sold feed to the Contracting Company while the latter was proceeding with the performance of its contract with the improvement district; and this is an action instituted by appellant to recover a balance of $396.45 due on the account. The feed stuff was delivered to the Contracting Company, and, according to the testimony, was used in feeding live stock which constituted a part of the equipment used in the construction of the improvement.

On September 9, 1918, the Construction Company filed a complaint in the Pulaski Chancery Court against the Contracting Company and the board of commissioners of the street improvement district and a bank in Little Rock where the funds were deposited, setting forth their contract with the Contracting Company, alleging that the latter had violated the terms of the contract and asked an injunction prohibiting the board of commissioners of the improvement district from paying any further money to the Contracting Company. Subsequently under an order of the chancery court entered in that action by consent, the Construction Company was authorized to take charge of the work of constructing the improvement, and the commissioners were directed to make all payments on estimates to the Construction Company. Thereafter the work of constructing the improvement was conducted by the Construction Company and the Contracting Company had nothing further to do with that work.

Funds were accumulated in the bank as the result of the earnings under this work of construction, and appellant instituted the present action in the circuit court of Pulaski County and caused a writ of garnishment to be issued and the depositary of the funds was sum-

moned as garnishee. There was also an order of general attachment issued and levied on a motor truck used in the construction of the improvement. The suit was instituted against the Contracting Company, but appellees Vansant and Rector intervened, claiming the funds as a part of their earnings under the contract after they took it over pursuant to the decree of the chancery court; they also claimed the truck which was seized under the order of attachment as their own property. Appellant answered the intervention plea of Vansant and Rector, alleging that their contract with the Contracting Company constituted them copartners with the latter in the construction of the street improvement in which they were engaged at the time appellant furnished the feed and that the purchase of the feed was for the joint benefit of the copartnership. The cause was transferred to the chancery court without objection, and proceeded to a final decree, which was in favor of appellee, dismissing the garnishment and attachment.

The case is presented here on the contentions of the respective parties whether or not the contract between the Construction Company and the Contracting Company constituted a copartnership agreement. The decision of the cause turns on that question. A contract between parties relating to a joint enterprise, which does not in terms and by name create a partnership, is rarely ever free of doubt, and very frequently the determination of the relation between the parties is a very difficult one. There have been many such cases before this court. In *Roach v. Rector,* 93 Ark. 521, we said: "As between the parties themselves, before it can be said that the relationship of partners has been created, it is therefore essential that the parties themselves intended by the effect of their contract to form such partnership business, and that they should have common ownership and community of interest in the properties of the business, and that they should share in some fixed proportion in the profits thereof only as profits of the business." But in the very recent case of *Mehaffy v.*

*Wilson,* 138 Ark. 281, we held that a partnership might exist under a contract, regardless of the actual intention of the parties as to the character of relationship established thereby, if the substance of] the contract made them in fact copartners. In stating that rule we said that "if the language of the contract, when considered as a whole, creates the partnership relation, then it should be so construed, even though the parties expressly provide that such is not their intention."

In that case the contract contained an express provision that the parties did not intend to create a partnership, and in that respect the contract was different from the one now under consideration.

It is urged by learned counsel for appellees that the case just cited is decisive of the present one, but we do not think that the facts in the two cases are similar to a controlling extent. In the case cited Wilson, the party sought to be held as a co-partner with Russell, owned timber lands and a saw mill outfit and certain buildings, and he furnished the same to Russell for the purpose of cutting the timber and manufacturing it into lumber. The contract specified that Wilson was to be paid for his timber at a stipulated price and that he was to receive a part of the net profits as compensation for use of the mill and the buildings on the land. In disposing of the case we held that Wilson was not a copartner of Russell, and we said: "Wilson was the sole owner of the mill and the machinery that caused the injury. There was no community of interest in the property existing at the time of the injury, no division of profits or losses as such. Wilson was not responsible for any losses and did not share in the profits as profits, but only was to receive a certain price for this timber and then compensation for his services and use of the mill, residences, etc., out of a certain proportion of the profits, if there were profits. These conditions would not make him a partner of Russell."

Now, in the present case the contract with the improvement district was the subject-matter of the con-

tract between these parties, and there was complete community of interest between them as to that subject-matter and the profits to arise therefrom. The Construction Company, it is true, was to furnish certain equipment for use, but this was merely an incident to the main contract. There was no provision in the contract for the sharing of losses, but that was not necessary in order to constitute a partnership, for the law imposed such an obligation if a partnership exists. There is in the contract all the elements of a joint enterprise and one of joint contribution to a common end and the sharing of profits on specified terms. They are the elements which make a partnership in law, and it is difficult to conceive of a partnership more complete than this one, unless there be an express provision in so many words to create a partnership.

Upon consideration of the contract as a whole, we are of the opinion that Vansant and Rector were copartners with the Contracting Company and are jointly liable as such for the debt due appellant.

It is contended that no partnership could have existed because it was beyond the power of the Contracting Company as a corporation to enter into a partnership agreement. Conceding that the contract was *ultra vires* so far as the corporation was concerned, yet the latter was liable because the purchase of the feed stuff from appellant was in furtherance of the purposes for which the corporation was created, and Vansant and Rector as individuals can not take advantage of the fact that the contract was beyond the power of the corporation. *Bluff City Lbr. Co.* v. *Bank of Clarksville,* 92 Ark. 1.

It is also contended that the garnishment was improper, because the improvement district was not subject to garnishment at law. *Sallee* v. *Bank of Corning,* 134 Ark. 109. The answer to that is that the cause was transferred to equity where a garnishment of the funds would lie, and the fact that the cause was originally brought at law does not defeat enforcement of that rem-

edy in a court of equity by the transfer of the cause. The garnishment held the funds, even though the suit was brought in the wrong court, and the remedy became complete when the cause was transferred.

Our conclusion is that the decree of the chancery court was erroneous, and it is therefore reversed and the cause remanded with directions to enter a decree in favor of appellant in accordance with this opinion.