HENSLEE *v.* MOBLEY.

Opinion delivered April 11, 1921.

1. CONTRACTS—DEFECTIVE HIGHWAY WORK—EVIDENCE.—In a suit by a subcontractor for the amount due him from the original contractor for highway improvement work, evidence *held* not to sustain the chancellor's finding that the subcontractor's work did not substantially comply with the contract.

2. CONTRACTS—FORFEITURE OF SUBCONTRACT.—A contractor for improvement of a highway can not forfeit a subcontractor's contract if his work substantially conforms to the contract, though minor defects had to be corrected.

3. CONTRACTS—RECOVERY OF EXTRA COSTS FROM SUBCONTRACTOR.—Where a contractor committed the first breach of the contract with his subcontractor by wrongfully withholding payments due on account of the subcontractor's refusal to correct defects in the work for which the subcontractor was not responsible, he

can not recover from the subcontractor, after the latter's refusal to continue the work, the cost of completing it in excess of the contract price.

4. CONTRACTS—DEDUCTION OF EXPENSE OF COMPLETING WORK.—Where a subcontractor was bound to correct certain minor defects in his work, he was chargeable with the actual cost of making such repairs, but it was error to allow an amount therefor largely in excess of the cost thereof.

5. APPEAL AND ERROR—REFUSAL TO SUSTAIN GARNISHMENT PREJUDICIAL.—The erroneous refusal of the court to sustain plaintiff's garnishment of funds due to defendant contractor from a highway improvement district was prejudicial where it did not appear from the record whether the amount so paid into court was sufficient to pay all the claims, since, unless the plaintiff obtained priority in that manner, he might not recover the full amount of his debt.

6. HIGHWAYS—GARNISHMENT OF FUNDS OF DISTRICT.—A subcontractor is entitled to garnish the funds due the principal contractor from a highway improvement district where it appears that the work has been completed and that the district has no claim against the contractor.

7. COSTS—RIGHT TO RECOVER.—A subcontractor who recovered from the principal contractor a substantial part of the amount claimed to be due should not be required to pay the costs of the suit, though the contractor was allowed deductions for correcting certain minor defects in the subcontractor's work.

8. CONTRACTS—BURDEN OF PROVING ADDITIONAL EXPENSE.—In an action by a subcontractor for the amount due under his contract, the burden is on the principal contractor to establish his right to deduct the extra cost of completing the work to conform to the contract, and he can not recover an additional amount as increased expense of furnishing rock to complete the work where the record fails to show the amount thereof.

9. GARNISHMENT — WHEN EQUITABLE GARNISHMENT SUSTAINED.—A stipulation that a certain highway contractor had not sufficient funds or property with which to discharge his indebtedness to another creditor established his insolvency, essential to sustain an equitable garnishment of funds due the contractor from the district.

Appeal from Woodruff Chancery Court, Northern District; *A. L. Hutchins,* Chancellor; reversed.

*Caldwell & Triplett,* for appellant.

1. The court erred in holding (1) that retained percentages of a contractor in the hands of a road district

are subject to garnishment. Road districts are not subject to garnishment. 90 Ark. 236; 31 *Id.* 387; 56 *Id.* 451.

2. Appellant should have had priority in the funds of the district for the reason that the facts in this case are the facts in the Plummer case. 90 Ark. 236.

3. Appellant did not breach the contract. Mobley had no right to refuse to pay Henslee's estimates. 152 Ill. 59; 30 L. R. A. and note; 88 Ark. 422, 491; 38 *Id.* 174; 78 *Id.* 336, 341; 64 *Id.* 228.

A few defects in the work did not justify the withholding of payments, where there is a percentage retained until final completion of the work. The contractor, notwithstanding such defects, recovers the contract price, less the cost of correcting the defects. 105 Ark. 356.

4. The evidence shows a substantial compliance with the contract and performance by appellant, and Mobley's demands were unwarranted.

5. The costs should not have been adjudged against appellant, and it was error to do so, as this suit was thrust upon him in spite of his willingness at all times to comply with his contract, as shown by the engineers and by his continuing at work after Mobley's breach, until forced off the work. Appellant is entitled to payment for $7,663.36 and interest and his costs.

*Carmichael & Brooks,* for appellee.

McCulloch, C. J. Cotton Plant Road Improvement District No. 1 of Woodruff County was organized for the purpose of improving a public road running west from the corporate limits of the town of Cotton Plant to the Prairie County line. The road was to be drained and graded and covered with a crushed rock base and then topped or surfaced with asphaltum in accordance with the plans and specifications prepared by the engineer of the district and approved by the State Highway Commission.

Appellee, R. Mobley, entered into a contract with the improvement district in August, 1917, to construct the improvement on stipulated terms and prices, and in September, 1917, appellee entered into a subcontract with appellant for the latter to do the work of clearing and grubbing preparatory to the construction of the road, the removal of fences and other obstructions, the grading of the roadbed and hauling, spreading, filling and rolling of the crushed rock used as a base, thus preparing the road for the asphalt top. Appellant was also to haul and place the material for culverts. In other words, appellant contracted to do all the work of constructing the improvement in accordance with the plans and specifications except the work of laying the asphaltum top, which was to be done by appellee himself. The contract between appellant and appellee specified the terms and prices, and that it was to be done in accordance with the contract of appellee with the improvement district and under the directions and supervision of the engineer. The contract provided for monthly estimates of the work to be made by the supervising engineer, and payments to be made thereon, retaining fifteen per centum until the completion of the contract, in accordance with a similar provision in appellee's contract with the improvement district. Appellant proceeded with the work shortly after the execution of the contract and pursued it until the following August when a controversy arose between the parties as to alleged defects in the work done by appellant. The work began at the corporate line of the town of Cotton Plant and proceeded westward by stations numbered from zero upward. At the time appellant quit work he had completed his work on the road up to and including station 433 and the asphalt had been placed on the road up to and including station 111. The remainder of the work was thereafter completed by appellee. Payments were made to appellant on the estimates, exclusive of the retained percentage, up to the estimate made on August 6, 1918, for the July work which appellee refused to pay to appellant on the ground

that his work was defective and not up to the standard specified in the contract. Appellee refused to pay the amount called for in this estimate unless appellant would go back over the work and remedy the alleged defects. Appellant contended that he had done the work in accordance with the specifications, with the exception of certain minor matters which will be referred to later, and he refused to go back over the work for the purpose of bringing it up to the standard of the contract. His contention was then and is now that the defects in the roadbed were caused by delay of appellee himself in failing to follow up the work and put on the asphalt before the roadbed was worn away by traffic and bad weather. At this point of the controversy appellant did not quit work, but instituted the present action in the circuit court of Woodruff County against appellee to recover the amount due on the estimate for the July work and also for the retained percentage on the work for the months prior thereto. Appellant continued to work until some time in November, 1918, when, on account of lack of funds and the continued refusal of appellee to make payments until appellant should, pursuant to demand, go back over the work and remedy the alleged defects, he quit the job altogether, and the suit also embraced the claim of appellant for work done under the contract subsequent to July, 1918, as well as the amount alleged to be due prior to that time.

It was alleged in the complaint that appellee broke the contract by refusing, without justification, to make payments in accordance with the terms thereof. Appellee answered, denying that he had broken the contract, but alleged, on the contrary, that appellant committed the first breach by failing to do his work in accordance with the terms of the contract and in refusing on demand to go back over the work and remedy the defects. Appellee alleged that the defects were caused by the failure on the part of appellant to grade the road up to the height specified in the plans and by failing to lay sufficient rock for the base and to properly roll the same and by fail-

ure to cut the ditches as specified. He also alleged that it was the duty of appellant, under the contract, to go back over the work and grade up to the shoulders of the embankment. Appellee presented a counterclaim against appellant for the cost of curing the defects and also for the extra cost of completing the road after appellant quit work. Appellant alleged in his complaint that appellee was insolvent, and at the commencement of the action sued out a writ of garnishment and caused the same to be served on the improvement district.

James & Echols, a firm of merchants at Cotton Plant, filed an intervention in the cause against appellant asking for judgment against the latter in the sum of $1,175.90 with interest, and interventions were also filed by the Standard Oil Company of Louisiana and the Southern Trust Company of Little Rock, asserting claims against appellee Mobley, and the last-named intervener set forth an assignment to it by appellee of the funds due by the improvement district.

The cause was transferred to the chancery court on motion of appellee, and without objection from any of the other parties. The cause proceeded to final decree in which the claim of appellant against appellee was adjudged in the sum of $7,983.92, but the court found that appellant had broken the contract, and that appellee was entitled to a set-off against said amount in the sum of $4,931.62, leaving a balance due by appellee to appellant of the sum of $3,052.30, for which a personal decree was rendered in favor of appellant against appellee. The court also decreed in favor of James & Echols against appellant for the recovery of its account of $1,175.90, and also rendered decrees in favor of the other interveners against appellee. The court also directed the improvement district, as garnishee, to pay into court the sum due by the district to appellee under the contract, and decreed that appellant and said interveners share *pro rata* in accordance with the amount of their respective claims, in the distribution of said funds.

The court in its recital of the findings in the face of the decree listed the following items as constituting the credits to which appellee was entitled as a counterclaim against appellant's debt, as follows:

For additional stone to bring up base up to even
    grade ....................................................................................$1,042.92
For completing grading and open ditches............... 3,242.90
For excavation (John Rollers)........................................ 407.92
For clearing and grubbing........................................... 137.14
For fence moving ........................................................... 89.94
For culverts ..................................................................... 10.80

Appellant Henslee is the only party who is prosecuting an appeal, and the correctness of the court's finding as to the amount of his claim against appellee is not questioned. The only controversy here with respect to the status of the account between the parties arises upon the counterclaim of appellee, and this involves primarily a determination as to which of the parties committed the first breach of the contract. Appellant quit work before completing the road in accordance with the terms of his contract, and he seeks to justify himself in this action by showing that appellee broke the contract by refusing to make payments in accordance with the terms thereof. On the other hand, appellee contends that appellant broke the contract by refusing without just cause to comply with its terms. After careful consideration of the testimony in the voluminous record before us, we have reached the conclusion that the chancellor erred in his finding that appellant committed the first breach of the contract.

There is a conflict in the testimony as to whether at the time appellee refused to pay appellant for the July estimate the work had been imperfectly done by appellant, or, in other words, that he had not performed the work in accordance with the contract up to that time. Appellant conceded at the time the controversy arose and concedes now that there were minor defects in his work which he was willing to rectify so as to bring the work up to the standard of perfection specified in the contract, but he was unwilling to accede to the unwar-

ranted demands of appellee that he go back over the work and repair damage to the roadbed which had resulted from the wear of traffic and weather during the period of delay caused by appellee himself in the failure to promptly put on the asphalt top.

The principal point in the controversy between the parties at that time was as to who should dress the shoulders of the roadbed on that part of the work which appellant had already done and for which estimates had been made. The contention of appellant was that he had graded the road up to the proper standard, and that it had worn down by traffic and weather, and that under the contract he was not compelled to repair that damage. The testimony tends to show that most of the damage to the roadbed was done by the exposure of the roadbed to traffic and to bad weather without the asphalt top being on it. According to the preponderance of the testimony, the work done by appellant under the supervision of the engineer was substantially in compliance with the terms of the contract. The testimony of the engineers who inspected the work shows that and they only claimed that there were minor defects in the work—that it was done substantially in accordance with the contract. The testimony also shows that the work was passed by the engineers and estimates handed in for the purpose of paying the subcontractor, without any objection made to the work. This does not mean that the work was, so far as concerns the rights of the improvement district, finally accepted so as to preclude the district from raising the question of the sufficiency of the work, but it was a strong circumstance to show in this controversy that appellant had substantially performed the work, otherwise he would not have been entitled to a preliminary estimate for the purpose of collecting for the work he had done. The testimony shows that it was not customary for the engineers to estimate the work unless it was done in substantial compliance with the terms of the contract. There is testimony also by disinterested engineers and contractors, who have had considerable ex-

perience in work of this sort, that it was not customary, in the absence of a specific contract on the subject, to require a subcontractor to go back over his work, which had been estimated and received, for the purpose of dressing up the shoulders of the graded road. The testimony shows that the repairing of such defects falls on the principal contractor for the reason that the subcontractor, when he completes his part of the work in accordance with the contract, is entitled to compensation at the contract price. If damage to the work occurs from any source before the work is finally accepted by the owner, the loss falls on the principal contractor. It is not claimed that there is any clause in the contract between appellant and appellee which specifically required him to go back over the work for the purpose of repairing damage done after he had completed his work. There was also a controversy about the ditching, and appellant concedes that he had not completed the ditching, but claims that part of it was incomplete because of the fact that appellee had left rock along the space where the ditches were to be dug.

Appellee had the right to insist on appellant correcting the defects in his work, but, inasmuch as the work was substantially done in accordance with the contract, he could not rightfully demand anything more, and, since his demands upon appellant were unwarranted, he can not claim a forfeiture by reason of appellant's failure to correct the minor defects which appear to have existed in the work. Appellee is, of course, entitled to credit for the cost of correcting the defects in appellant's work, and since appellee was entitled to have the work done at the prices specified in his contract with appellant, he is now entitled to credit for the advance costs which he was required to pay over and above the contract price.

The items in appellee's counterclaim must be divided into two classes, one for the cost of performing additional work left undone by appellant prior to the time he quit, and the other for the costs of the completion

of the road in accordance with appellant's contract. The latter class of items must be excluded, for, since we have reached the conclusion that appellant did not commit the first breach of the contract, he is not liable for the additional cost of completing the road. The items of cost for the completion of appellant's work on that part of the road on which appellee put on the asphalt top—*i. e.*, the stations from 0 to 111, inclusive—were deducted from appellant's prior estimates and must therefore be excluded from the present consideration. The first item in the list allowed by the court is the sum of $1,042.92 for additional stone used in bringing up the base of the road to the standard of the contract. We are of the opinion that the testimony is sufficient to show that this was necessary in order to complete the rock base, but the court allowed an excessive amount. The price of the work was fixed according to the quantity of rock used and the distance it had to be hauled. There had been a decided advance in the cost of this kind of work between the date of appellant's contract and the date this work was done by appellee in order to remedy the defects. But the advance was not, according to the testimony of disinterested witnesses, sufficient to justify the prices which appellee charged and which the court allowed. For instance, under appellant's contract he was allowed $1.40 per cubic yard on a haul of from two to three miles, whereas appellee charged $3.60 per cubic yeard. The testimony of disinterested witnesses shows that at that time $1.85 was a fair price for that work. The same proportion exists throughout the whole of appellee's account for the cost of doing the additional work. Computing this work according to the prices fixed in the testimony of disinterested witnesses, the amount which appellee should be allowed is $201.80, and the allowance will be reduced to that amount.

The next item allowed by the chancellor is the sum of $3,242.90 for "completing grading and opening ditches." The court must have included in this item the additional work of completing the road after appellant

quit, for there is no testimony to justify the conclusion that anything like that amount of work was done on that part of the road which appellant had passed as complete. All of this work was done on a yardage basis, and, of course, appellee was entitled to credit for all the additional work of completing that part of the road which appellant had passed at the difference between what appellant's contract price was and the advance cost of doing it at that time. A statement of the account made by Mr. Mashburn, the engineer of the road district, shows that there were 41,336 cubic yards of earth up to and including section 433, and that appellant had handled 39,397 cubic yards before he quit. Appellee could only have handled the difference between these two amounts, which would be 1,936 cubic yards. Appellant was to be paid, under the contract, twenty-four cents per cubic yard and it cost appellee, according to the testimony, forty cents per cubic ward to have the work done, a difference of sixteen cents per cubic yard, at which price appellee is entitled to compensation. This would amount to $309.76, for which appellee is entitled to credit. The item of $10.80 for culverts is not contested by appellant. All the other items are for work done to complete that part of the road which appellant had not worked on, and for the reasons already stated appellee is not entitled to make any claims against appellant for that. The aggregate of the items for which we find appellee is entitled to credit is $522.52, which leaves a balance due appellant of $7,461.40, with interest from September 11, 1918, as fixed by the court.

It is also contended that the court erred in refusing to sustain appellant's garnishment against the road district, and we are of the opinion that this contention should be upheld. Counsel for appellee answer that this is not important for the reason that the court ordered the district to pay the balance due to the contractor into court and then ordered it distributed to the different claimants in this action. But the record does not show how much was paid in under this order, as the court

made no specific finding as to the amount due to the contractor; it can not be determined whether there is a sufficient amount to pay appellant the full amount of his debt if he is to share the proceeds *pro rata* with the other creditors. It therefore becomes material to adjudicate the question of the right of appellant to an equitable garnishment of the funds, for, unless he obtains priority in that manner, the full amount of his debt may not be recovered. It is conceded that appellee is insolvent, and that appellant has no other means of securing payment except by subjecting to its payment the funds due from the improvement district.

The application of the principles announced by this court in the case of *Plummer* v. *School District*, 90 Ark. 236, establishes appellant's right to priority through the remedy of an equitable garnishment. He is, according to the doctrine of that case, entitled to priority in payment, because the commencement of his action was prior in point of time to that of the other creditors. The point is made that the amount due from the improvement district is for the retained percentage. Conceding that this is not subject to garnishment until the liability of the district for its payment matures by the completion of the work, it appears in this case that before the final decree the work had been completed and there was no further reason for withholding the retained percentage of the contract price. In fact, the court ordered the funds turned into court and distributed among the creditors. Appellee is in no attitude to raise the question that the rights of the improvement district would be invaded by compelling it to answer a garnishment for the retained percentage.

It is also contended that the court erred in decreeing the payment of a portion of the costs against appellant, who recovered below a substantial sum. If the decree of the court had been correct in adjudicating the rights of the parties in other respects, then it would have been just and equitable to impose a portion, if not all, of the costs on appellant. The court found

that appellant had broken the contract and was liable for the aggregate amount of the items set forth in appellee's cross-complaint. If this conclusion were found to be correct, then we would sustain the chancellor in his decree for costs, but, since we have reached the conclusion that appellant did not break the contract and is entitled to the recovery of the contract price of his work after deducting the cost of correcting the minor defects, then it follows that he should not be required to pay any of the costs of the litigation. It comes down to simply a question of appellant recovering less than he sued for, and that affords no reason why he should not be entitled to recover his costs expended in the litigation.

The decree is therefore reversed and the cause remanded with directions to enter a decree in accordance with this opinion, awarding appellant recovery of the amount herein specified against appellee and giving his claim priority in the distribution of the funds paid over by the improvement district.

OPINION ON REHEARING.

McCULLOCH, C. J. It is contended now that, since we allowed appellee a credit of $201.80 for the additional cost of hauling and spreading rock for the base, we ought also to have allowed him credit for the cost of the rock, for the reason, as it is claimed, that it was necessary to furnish additional rock to supply the shortage of earth in bringing up the grade to the standard provided in the contract. We failed on the original consideration of the case, and fail now, to find any testimony to warrant an allowance for the cost of furnishing additional rock. The conflict in the testimony was to advanced cost of hauling and spreading the rock. The burden was on appellee to prove the additional cost of supplying omissions in the work of appellant, and he showed that, on account of advanced cost of labor, he had to pay more than the contract price with appellant, and he claimed and was allowed for this difference. The testimony of expert engineers introduced as witnesses by appellant was directed

to that point. That was the point of controversy between counsel in presenting the case on the original hearing. It was not claimed, as we understood the respective contention of counsel, that additional rock had been furnished, but that appellant had not used enough rock in the base and had not properly spread it.

We see no reason now for changing the conclusion on the original hearing.

Again, it is contended that the garnishment should not have been sustained for the reason that the insolvency of appellee was not proved. Appellant's counsel asserted in their brief that appellee's insolvency was conceded, and counsel for appellee did not dispute the assertion. We now find in the record an express admission of facts which established appellee's insolvency. There is a stipulation to the effect that appellee had not sufficient funds or property with which to discharge his indebtedness to a certain creditor to whom he had assigned his claim under the contract against the road district. This made out a case of insolvency without other proof of that fact. This was an equitable garnishment, and proof of insolvency was essential to a resort to that remedy. This action was originally instituted at law, and the garnishment could not have been sustained, but the cause was transferred to the chancery court, and the remedy of garnishment thus became available. *Hayes-Thomas Grain Co.* v. *Wilcox Cons. Co.,* 144 Ark. 621.

We have held that in a suit in equity against a public agency, such as a school district or an improvement district, there may be a garnishment of funds of the district, and that in a suit against the creditor of an improvement district the district is subject to equitable garnishment; but in either case insolvency is the basis of the equitable remedy. *Plummer* v. *School District,* 90 Ark. 236; *Sallee* v. *Bank of Corning,* 134 Ark. 109; *Bayou Meto Drainage District* v. *Chapline,* 143 Ark. 446.

Our attention is called to the fact that, in reversing and remanding the cause, we failed to state, in express

words, at least, that the claim of James & Echols against appellant should be allowed out of the funds in court, as awarded by the court. There was no controversy between appellant and James & Echols on that point, and our directions to the chancery court implied that that part of the original decree should be carried out. It is so directed now.

The rehearing is therefore denied.