# TXO PRODUCTION CORP. *v.* PAGE FARMS, INC., et al.

85-224                                    698 S.W.2d 791

Supreme Court of Arkansas
Opinion delivered November 12, 1985

*Hardin, Jesson & Dawson*, by: *Rex M. Terry*, for appellant.

*Gardner, Gardner & Hardin*, by: *Stephen C. Gardner*, for appellees.

GEORGE ROSE SMITH, Justice. This action was brought by the principal plaintiff, Page Farms, Inc., under Act 269 of 1981, to recover unpaid royalties due upon gas being produced from a gas well drilled and being operated by the defendant TXO Production Corp. Ark. Stat. Ann. § 53-525 (Supp. 1985). The well was drilled on a unitized tract in which Page Farms' predecessors in title had leased their interest. The trial judge, sitting without a jury, found for the plaintiff and entered a judgment for $5,917.20, plus the statutory penalty, interest, and attorney's fee. The Court of Appeals transferred the case to us, as coming within Rule 29(1)(n). We affirm.

The facts are not materially in dispute, the issues being essentially questions of law. Tate C. and Wanda Page executed an oil and gas lease on their property in 1964. They later conveyed their interest to a family corporation, Page Farms, Inc. The leasehold interest was eventually transferred to TXO, which completed a gas well in February, 1982. Under Section 53-525, *supra*, the payment of royalties should have begun not later than six months after TXO's first sale of gas. That did not occur. In September, 1982, TXO received a title opinion from its attorney, finding that Page Farms was the true owner of its tract within the unitized area. In March, 1983, TXO sent a division order to Page Farms which correctly recited its interest. Page Farms, however,

did not promptly sign and return the division order. Apparently in part for that reason, TXO still did not begin paying royalties to Page Farms, which filed this action in July, 1983. Judgment, as we have said, was in favor of Page Farms.

TXO lists and argues four points for reversal or modification of the judgment, but there are so many subordinate supporting reasons presented that we can hardly discuss them all. We confine our opinion to what we regard as the controlling questions.

■ First, it is argued that TXO was entitled to delay payment because Page Farms' title was not marketable. The marketability of a title is to be determined by the public record. There is no indication that Page Farms did not have a clear record title while TXO was delaying its payments. In fact, TXO's own examining attorney had approved the title. TXO argues, however, that this action was filed not only by Page Farms, Inc., but also by Page Farms, a limited partnership, and TXO did not know which one to pay. The title, however, was in the corporation during nearly all the critical time. Apparently a deed from the corporation to the partnership was executed for tax purposes and recorded a few weeks before the trial, but TXO's own house counsel testified, quite correctly, that the land description in that instrument was void on its face. Payment to Page Farms, Inc., would have been justified.

■■ TXO also argues that the title was somehow rendered unmarketable by Page Farms' failure to sign the requested division order. To begin with, the oil and gas lease did not require the lessors to sign such an order. TXO submitted testimony that division orders are recognized by custom and usage as being required in the oil and gas industry, but there is no proof that Mr. and Mrs. Page were so familiar with the oil and gas business that their knowledge and acceptance of the particular usage must be presumed. Absent such proof, they were not bound by any such custom or usage. *Sharpensteen* v. *Pearce*, 219 Ark. 916, 245 S.W.2d 385 (1952); *Ben F. Levis, Inc.* v. *Collins*, 215 Ark. 172, 219 S.W.2d 762 (1949). Additionally, the proposed division order contained provisions, unfavorable to the lessors, that were not authorized by the lease. Page Farms was not at fault in failing to sign the division order, nor is its title shown to be unmarketable.

Second, the lease contained a provision commonly inserted

in such leases, reciting that no change in ownership of the leased premises would be binding upon the lessee until 30 days after evidence of the change had been furnished to the lessee. This lease was executed by the Pages in 1964, but no notice of changed ownership was given to the lessee when the Pages conveyed the property to Page Farms, Inc., in 1975. That was some seven years before TXO drilled the well and TXO's attorney informed TXO that Page Farms owned its fractional interest as a lessor.

It is now argued that the lessor's failure to notify TXO of the change in ownership prevents Page Farms from recovering the penalty, costs, and attorney's fee under the statute penalizing the late payment of royalties.

This argument arises from a situation of frequent occurrence, in which a plaintiff sues for breach of contract and the defendant asserts as a defense an earlier breach by the plaintiff. If the plaintiff's breach is material and sufficiently serious, the defendant's obligation to perform may be discharged. Restatement, Contracts, § 397 (1932). Not so, however, if the plaintiff's breach is comparatively minor. Corbin states the basic rule: "If one party to a bilateral contract commits a partial breach of his duty, one that is not so material as to discharge the other party's duty of performance, the latter's only remedy is damages for the partial breach." Corbin, Contracts, § 1253 (1962).

We have applied the rule in situations too numerous to mention. For example, in *Henslee* v. *Mobley*, 148 Ark. 181, 230 S.W. 17 (1921), a subcontractor sued the contractor for the agreed contract price of the subcontractor's work. The contractor contended that he owed nothing, because the work was not properly done. It was found that the subcontractor had substantially performed the work, though there were minor defects. We held that the contractor had a right to insist on the correction of the defects, but "he could not rightfully demand anything more, and . . . can not claim a forfeiture by reason of appellant's failure to correct the minor defects."

The trial judge in the case at bar recognized the problem and supplied the correct answer in his conclusions of law:

> That the failure of the plaintiffs or their predecessors in interest to notify the lessee or lessee's successor in

interest of a change in ownership is not [such] a material or consequential breach of the original lease as to bar the plaintiffs from recovery. Had the facts in the instant case showed that the defendant had no notice in a change in ownership of the mineral interest, then defendant's contention would have merit. The facts presented show that the defendant had notice of the change in ownership from the title opinion dated September 9, 1982, and was aware that Page Farms, Inc., was the current owner.

That the withholding of royalty payments by defendant under the circumstances as shown by the evidence in this case was improper.

■■ We wholly agree with the trial court's decision. The Restatement of Contracts declares that an influential circumstance in the determination of the materiality of a failure fully to perform a contract is the extent to which the injured party, here TXO, will obtain the substantial benefit that he reasonably anticipated. § 275; rule repeated in Restatement, Contracts 2d, § 241 (1981). Here TXO obtained the expected benefits in their entirety. It took possession of the well site, drilled the gas well, and presumably is selling the gas. It cannot fairly be said that the lessor's failure to notify TXO of the changed ownership contributed to its long delay in paying royalties that were due. In fact, this defense was evidently an afterthought, for TXO had enumerated the following seven other defenses in its pleadings before the change-of-ownership defense was mentioned, almost a year after the complaint was filed: Plaintiff's failure to give notice before filing suit, estoppel, laches, waiver, limitations, TXO's freedom from fraud, and plaintiff's failure to execute a division order. In the circumstances the plaintiff's breach of contract was not material and is to be disregarded.

■ TXO's third point is that Page Farms did not comply with a provision in the lease requiring the lessor to give written notice of any claim that the lessee had breached the contract and exempting the lessee from liability for any breach that occurred more than 60 days before the lessee's receipt of the written notice. We agree with the decision of the Texas Supreme Court, that this provision applies only to an action to cancel the lease and cannot have been intended to bar the lessor forever from recovering

damages sustained prior to the giving of the notice. *Texas Oil & Gas Corp. v. Vela*, 429 S.W.2d 866 (Tex., 1968).

Finally, TXO insists that the trial judge's allowance of a $2,000 attorney's fee is excessive. The plaintiff's total recovery was $6,500.07. Its attorney submitted an itemized statement based on a $75 hourly charge, totaling $2,977.25. The trial judge was in a position to evaluate the worth of counsel's services in the case. The allowance is not excessive.

Affirmed.

HOLT, C.J., and NEWBERN, J., dissent.

PURTLE, J., not participating.

DAVID NEWBERN, Justice, dissenting. I disagree with that part of the majority opinion which characterizes as "minor" the failure of Tait C. and Wanda Page to give notice of the change in ownership as required by the lease. I have no quarrel with the authority cited in the majority opinion. In the context of a suit in which the reason asserted for not paying proceeds is confusion as to the identity of the lessor, failure to give the notice of change in ownership should not be regarded as minor.

The majority opinion, in my view, does not take sufficient cognizance of the relationship between the failure to give the required notice and the refusal to execute a division order or a stipulation of interest as well as the conveyance to yet a third party. Not only did the Pages convey their lessor's interest to the corporation without notice, but they caused the corporation to convey the lessor's interest to a limited partnership "for tax purposes," again without notice.

I agree the lessee cannot require the lessor to execute a division order, but I cannot agree to take lightly the apparent assertion of the majority that the lessee had a duty to pay the mineral proceeds to the corporation because of the lessee's knowledge of the title obtained from its attorney. Execution of the required notice of change in ownership would have eliminated at least the question of whether Tait C. and Wanda Page or Page Farms, Inc. was to be the recipient of the lease proceeds. A title opinion is no more than that. TXO had no duty to ascertain the title or to rely on its attorney's opinion.

Apparently the title opinion did not reflect the transfer to Page Farms, Ltd. If the payment had been made to Page Farms, Inc., while title was in the limited partnership, TXO would have been subjected to a claim by the partnership, because it held title, as well as a claim by the Pages as individual lessors.

The breach of the lease agreement resulting from failure to give notice to the lessee of sale of the lessor's interest did not excuse TXO from payment, but in my opinion it did excuse the delay for which TXO is being unfairly penalized in this case. Therefore, I respectfully dissent.

HOLT, C.J., joins in this dissent.