T.C. Memo. 2007-8


UNITED STATES TAX COURT


WILL K. NG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3883-05L.              Filed January 16, 2007.


<u>John Gigounas</u>, for petitioner.

<u>Andrew R. Moore</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Pursuant to section 6330(d),[1] petitioner seeks review of respondent's determination regarding collection of his 1993, 1994, and 1995 income tax liabilities.  The issue

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

for decision is whether respondent's determination to proceed with collection was an abuse of discretion.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.[2] The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time he filed his petition, petitioner lived in San Francisco, California. As of February 29, 2000, petitioner owed income taxes and additions to tax for 1993, 1994, and 1995 of $113,417.14, $24,228.67, and $18,789.03, respectively. On January 18, 2000, petitioner filed a Form 656, Offer in Compromise (OIC), with respondent. On his OIC, petitioner proposed to settle his 1993, 1994, and 1995 tax liabilities with a cash payment of $83,779. Petitioner submitted his OIC on the grounds of doubt as to collectibility. The OIC stated (in relevant part):

> Item 8 - By submitting this offer, I/we understand and agree to the following conditions:
>
>     *      *      *      *      *      *      *
>
> (d)  I/we will comply with all provisions of the Internal Revenue Code relating to filing my/our returns and paying my/our required taxes for 5 years or until the offered amount is paid in full, whichever is longer.

---

[2] The parties initially stipulated that petitioner's 1993 tax liability was satisfied by the payment petitioner submitted with his offer-in-compromise. In their briefs, the parties agree that this is incorrect. Pursuant to Rule 91(e), we do not treat that portion of the stipulation as a conclusive admission by either party.

          *       *       *       *       *       *       *

(j)  I/we understand that I/we remain responsible for
     the full amount of the tax liability, unless and
     until the IRS accepts the offer in writing and
     I/we have met all the terms and conditions of the
     offer.  The IRS will not remove the original
     amount of the tax liability from its records until
     I/we have met all the terms of the offer.

          *       *       *       *       *       *       *

(o)  If I/we fail to meet any of the terms and
     conditions of the offer and the offer defaults,
     then the IRS may:

     • immediately file suit to collect the entire
       unpaid balance of the offer

     • immediately file suit to collect an amount
       equal to the original amount of the tax
       liability as liquidating damages, minus any
       payment already received under the terms of
       this offer

     • disregard the amount of the offer and apply all
       amounts already paid under the offer against
       the original amount of the tax liability

     • file suit or levy to collect the original
       amount of the tax liability, without further
       notice of any kind.

Respondent accepted petitioner's OIC by a letter dated

February 25, 2000.  That letter stated, in relevant part:

"Please note that the conditions of the offer require you to file

and pay all required taxes for five tax years or the period of

time payments are being made on the offer, whichever is longer."

The letter also reiterated the language above from Item 8,

paragraph (o) of the OIC.

Petitioner timely paid the offer amount of $83,779. Petitioner also timely filed returns and paid the tax owed for 2001, 2003, and 2004. The dispute in this case focuses on petitioner's failure to timely pay his 2002 tax.

After respondent granted petitioner's timely requests for extensions, petitioner timely filed his 2002 Form 1040, U.S. Individual Income Tax Return, on October 15, 2003. That return showed a tax liability of $86,496, payments of $9,849, and a remaining liability of $77,540.[3] With his 2002 return, petitioner submitted a $15,000 payment and a Form 9465, Installment Agreement Request. On the Installment Agreement Request, petitioner proposed to make payments of $20,000 on the 28th of each month.

Respondent neither accepted nor rejected petitioner's Installment Agreement Request. At trial, respondent did not contest petitioner's assertion that respondent never acted on the Installment Agreement Request. Moreover, it is not clear from the record whether any employee of respondent ever considered petitioner's Installment Agreement Request.

On November 14, 2003, respondent sent petitioner a letter stating that, as part of his OIC, petitioner agreed to timely file returns and pay his income taxes for 5 years following the

---

[3] The figure of $77,540 includes an estimated tax penalty of $893.

date respondent accepted the offer.  The letter warned petitioner that he needed to pay his remaining 2002 tax liability of $71,984.36 within 30 days "to prevent termination of * * * [his] Offer In Compromise."  The letter stated that if petitioner did not comply, respondent would terminate the OIC and would reinstate the original amount of the compromised liability, reduced for the payment petitioner had already made.

That letter apparently never reached petitioner and was returned to respondent by the Postal Service.  Respondent sent a nearly identical letter containing the same warnings to petitioner at his new address on December 10, 2003.  By that time, because of the accrual of interest and penalties, petitioner's 2002 liability had increased to $72,683.54. Petitioner does not contend that he did not receive the December 10 letter.   Petitioner did not pay his 2002 tax liability within 30 days of the December 10 letter or otherwise reply to the letter.

Petitioner received a letter from respondent dated February 11, 2004.  In that letter, respondent declared petitioner in default of the OIC and stated that "arrangements to compromise the liability are terminated."

Respondent applied petitioner's payment on the OIC to his previously compromised liabilities.  This left balances owing for

1993, 1994, and 1995 of $29,347.57, $33,763.22 and $30,195.96, respectively.

On March 24, 2004, petitioner made payments totaling $20,000 toward his 2002 tax liability.

In a letter dated July 7, 2004, respondent sent petitioner a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing (notice of intent to levy) for the outstanding 1994, 1995, and 2002 liabilities. The notice of intent to levy showed a total of $121,218.36 in unpaid taxes, interest, and penalties.

On July 14, 2004, petitioner paid respondent a total of $56,731.05, satisfying his 2002 tax liability.

On July 15, 2004, respondent sent petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (NFTL). On August 11, 2004, petitioner filed a Form 12153, Request for a Collection Due Process Hearing, with regard to the NFTL.

Appeals Officer Lawrence Dorr was assigned to petitioner's case. Petitioner's hearing consisted of an in-person meeting with Officer Dorr on January 19, 2005, and subsequent correspondence. During the hearing, petitioner raised the argument that although he had violated the literal terms of the OIC by failing to timely pay his 2002 income tax liability, his breach was not "material" and that respondent therefore should not have declared him in default on the OIC. Officer Dorr did

not have petitioner's Installment Agreement Request from October 15, 2003, and Officer Dorr did not consider the Installment Agreement Request in reaching his determination regarding petitioner's outstanding tax liabilities. On February 23, 2005, respondent issued to petitioner two Notices of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notices of determination) regarding petitioner's outstanding 1993, 1994, 1995, and 2002 tax liabilities.[4] In the notices of determination, respondent sustained the filing of the lien. In the Attachment to Determination Letter mailed with the notices of determination, respondent noted petitioner's argument that he had been improperly declared in default on the OIC and concluded that petitioner had been properly declared in default.

On February 28, 2005, petitioner timely petitioned this Court for review of respondent's determinations under section 6320 and/or 6330.

OPINION

I. Standard of Review

In the context of a section 6320 or 6330 hearing, a challenge to the Commissioner's determination that a taxpayer was properly deemed in default on an OIC is not a dispute of the underlying tax liability. See Robinette v. Commissioner, 123 T.C. 85, 93-94 (2004), revd. on other grounds 439 F.3d 455 (8th

---

[4] Petitioner's 2002 tax year is not at issue in this case.

Cir. 2006).  Petitioner has not raised any other issue that amounts to a challenge of the underlying tax liability.

Where the validity of the underlying tax liability is not properly in dispute, we review the Commissioner's determination for an abuse of discretion.  Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181 (2000).  Accordingly, we review respondent's determination to proceed with collection of petitioner's 1993, 1994, and 1995 tax liabilities for an abuse of discretion.  An abuse of discretion has occurred if the "Commissioner exercised * * * [his] discretion arbitrarily, capriciously, or without sound basis in fact or law."  Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

II.  Analysis Applied to Offers-in-Compromise

"An accepted offer in compromise is properly analyzed as a contract between the parties."  Dutton v. Commissioner, 122 T.C. 133, 138 (2004).  When reviewing whether the Commissioner abused his discretion in declaring a taxpayer in default on an OIC, our analysis is governed by "general principles of contract law." Id.

III.  Parties' Arguments

The parties have focused their disputes in this case on two contentious--and familiar--issues.  Petitioner urges that, when analyzing whether respondent abused his discretion by finding that petitioner defaulted on his OIC, we apply the "material

breach" analysis as applied in the majority opinion of this Court's decision in Robinette v. Commissioner, supra at 109-112. Applying that analysis, petitioner argues that late payment of his 2002 taxes was not material, and that respondent therefore abused his discretion by finding that petitioner defaulted on his OIC. Petitioner also urges that the Court consider his Installment Agreement Request and his testimony at trial, neither of which is part of the administrative record that respondent considered at the section 6330 hearing. Petitioner argues that, under this Court's decision in Robinette, the evidence is within the scope of this Court's review of a determination under section 6320 and/or 6330 for an abuse of discretion. On the basis of his testimony, respondent's internal procedures, and the Installment Agreement Request, petitioner urges that we should treat his Installment Agreement Request as having been granted. Had the Installment Agreement Request been granted, petitioner argues, late payment of his 2002 taxes would not have been a material breach of the OIC.

As to the contractual issue, respondent argues that we should apply the "doctrine of express conditions" analysis applied by the U.S. Court of Appeals for the Eighth Circuit in reversing this Court's decision. Robinette v. Commissioner, 439 F.3d at 462-463. Respondent also argues that, even under a "material breach" analysis, respondent did not abuse his

discretion by declaring petitioner in default on his OIC because petitioner's late payment of his 2002 taxes was a material breach. Finally, relying on the Court of Appeals' opinion in <u>Robinette</u>, respondent argues that we may not consider evidence beyond the administrative record when reviewing a determination under section 6320 and/or 6330 for an abuse of discretion.

## IV. <u>Analysis</u>

### A. <u>Applicable Contract Law</u>

#### 1. <u>Material Breach Analysis</u>

Under the "material breach" analysis applied by the Tax Court in <u>Robinette</u>, "'If the plaintiff's breach is material and sufficiently serious, the defendant's obligation to perform may be discharged. * * * Not so, however, if the plaintiff's breach is comparatively minor.'" <u>Robinette v. Commissioner</u>, 123 T.C. at 108 (quoting <u>TXO Prod. Corp. v. Page Farms, Inc.</u>, 698 S.W.2d 791, 793 (Ark. 1985)).

The Court went on to point out:

> "In determining whether a failure to render or to offer performance is material, the following circumstances are significant:
>     (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>     (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>     (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>     (d) the likelihood that the party failing to perform or to offer to perform will cure his

> failure, taking account of all the circumstances including any reasonable assurances; [and]
>     (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." [Id. at 109, quoting 2 Restatement, Contracts 2d, sec. 241 (1981).]

Although the above circumstances may by themselves indicate the materiality or nonmateriality of a breach, the standard of materiality is necessarily somewhat imprecise and flexible, and should be applied in light of the facts of each case in such a way as to further the purpose of securing for each party his expectation of an exchange of performances. 2 Restatement, supra sec. 241 cmt. a.

### 2. Doctrine of Express Conditions

Under the "doctrine of express conditions" analysis endorsed by the Court of Appeals in Robinette, an express condition of a contract is subject to a requirement of strict performance. Robinette v. Commissioner, 439 F.3d at 462 (citing 13 Williston on Contracts, sec. 38:6 (4th ed. 2000)). When an express condition fails to occur, the performance subject to that condition does not become due unless the nonoccurrence of the condition is excused. 2 Restatement, supra sec. 225(1). Under that doctrine, a failure to meet express conditions may be excused if they are immaterial to the exchange and if their enforcement would result in a disproportionate forfeiture.

Robinette v. Commissioner, 439 F.3d at 463 (citing 2 Restatement, supra sec. 229).

Under this analysis, the performance conditioned upon strict compliance with the terms of the OIC is the Commissioner's discharge of the full amount of the tax liability compromised.

### 3. Application

Considering all the relevant facts and circumstances, petitioner's significantly late payment of a substantial tax liability amounts to both a failure of an express condition of the OIC and a material breach of the OIC. Therefore, we need not decide which doctrine applies.

By the plain terms of the OIC, respondent was not obligated to discharge petitioner's unpaid 1993, 1994, and 1995 tax liabilities until petitioner "[complied] with all provisions of the Internal Revenue Code relating to filing [his] returns and paying [his] required taxes for 5 years or until the offered amount is paid in full, whichever is longer." The Internal Revenue Code required that petitioner pay his outstanding 2002 income tax liability of $77,540 by April 15, 2003. See secs. 6151(a), 6072(a). He failed to do so. Petitioner failed to pay the bulk of his 2002 tax liability for well over a year after it was due, eventually satisfying his tax debt with his final payment of $56,731.05 on July 14, 2004. Moreover, despite petitioner's failure to pay his 2002 taxes, respondent's letters

of November 14 and December 10, 2003, warned petitioner of the potential for default and gave him an additional opportunity to pay his taxes without defaulting on the OIC. Petitioner again failed to pay his 2002 tax liability.

Under the circumstances, petitioner's failure to satisfy his 2002 tax liability amounted to a "material breach" of the OIC. By withholding a sizable sum of money from respondent for a substantial period, petitioner deprived respondent of a material financial benefit under the OIC. Also, at the time respondent declared petitioner in default on February 11, 2004, it appeared unlikely that petitioner would cure his failure. By that time, petitioner had failed to comply with the terms not only of the OIC but also of respondent's letter of December 10, 2003 (again requesting payment of petitioner's 2002 taxes), thereby declining an opportunity to "cure" his failure.

By failing to satisfy his 2002 tax liability for over a year, petitioner committed a material breach of the terms of the OIC. Nor is there any applicable "excuse of a condition". As explained supra, an express condition of a contract may be excused if a contracting party can show that (1) compliance with the condition would result in a disproportionate forfeiture or penalty, and (2) the condition was not a material part of the bargain. See 2 Restatement, supra sec. 229. The record before us does not indicate that strict compliance would have resulted

in a disproportionate forfeiture or penalty to petitioner.
Moreover, for the reasons discussed supra, we find that the
condition that petitioner timely pay his 2002 taxes was a
material part of the OIC.

B. Scope of Review

Consideration of petitioner's testimony or the Installment
Agreement Request would not alter any of the conclusions above.
At the time petitioner filed his Installment Agreement Request,
the Commissioner's internal procedures provided that the
Commissioner could grant installment agreement requests from a
taxpayer in petitioner's situation without declaring the taxpayer
in default. Internal Revenue Manual sec. 5.19.7.3.17.3
(effective October 1, 2001). While it may have been within
respondent's discretion to overlook petitioner's noncompliance
with the OIC and grant petitioner's Installment Agreement
Request, we have long held that the Commissioner's internal
procedures do not have the effect of law and that noncompliance
with those procedures does not render an action of the
Commissioner invalid. Vallone v. Commissioner, 88 T.C. 794, 807-
808 (1987).

Petitioner also argues that because he was never notified
that his Installment Agreement Request was denied, we should
treat the request as having been granted. We disagree. We note
that petitioner failed to comply with the terms of his proposed

Installment Agreement by not making the monthly payments he had offered.  Such noncompliance hardly inspires the Court to find that petitioner's late payment of his 2002 taxes did not form adequate grounds upon which to find him in default of his OIC.

Indeed, consideration of petitioner's testimony would only bolster the conclusions that his breach was material and that there was no "excuse of conditions" because reinstatement of his original tax liability would not work a disproportionate forfeiture upon him.  At trial, petitioner admitted that the terms of the OIC were explained to him by his tax advisers when he entered into the compromise.  Petitioner also admitted that he realized a capital gain of $416,895 upon the sale of his home in December 2002.  Even after purchasing a new home and remodeling it, petitioner admitted he had slightly over $100,000 in cash with which to satisfy his 2002 tax liability.  Under such circumstances, petitioner's late payment of his 2002 taxes seems to be exactly the sort of "evasion of the spirit of the bargain, lack of diligence and slacking off, [and/or] willful rendering of imperfect performance" that typifies a failure of good faith performance and therefore indicates a material breach.  See 2 Restatement, supra sec. 205 cmt. d.  Accordingly, we need not decide herein whether we may consider evidence beyond the administrative record.

We conclude that respondent did not abuse his discretion in proceeding with collection of petitioner's unpaid 1993, 1994, and 1995 taxes.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.