Wilde, J.
This was an action of assumpsit for goods sold and delivered, and the general question is, whether all the defendants are liable, or Cooper alone, to whom the goods were delivered and charged in the plaintiffs’ books of account. This question depends on the terms of the contract between the defendants, made previous to the delivery of the goods.
By the terms of this contract, it is manifest, we think, that the defendants had no intention to create a partnership in the business referred to in the contract, and that inter sese no such partnership was created. The agreement was that Cooper should manufacture satinets for Cabot, Appleton & Co., the other defendants, on the terms stipulated. The stock was to be supplied by the latter, and the satinets were to be of such co ors as they should direct, and, when manufactured, were to be delivered to them. The satinets were therefore unquestionably the property of Cabot, Appleton & Co. They were bound to pay Cooper for all satinets made by him, at the rate of 14 cents per yard for pulled wool, and 14£ cents for fleece wool, and, in addition, to pay him one third part of the net profits of the business, after deducting a charge' of commission and guaranty on gross sales, of six per cent., and all premiums, insurance, transportation and expenses, with interest. In this manner, the compensation to Cooper for his services was to be ascertained; but he had no title to any share of the satinets, nor any lien thereon.
But it is contended by the plaintiffs’ counsel, that if the defendants were not partners inter sese, they were nevertheless liable, as partners, to third persons; because, if here was no *90 community of interest in the property, there was a community of interest in the profits, which renders them liable, as partners, to third persons. On this point the distinction appears to us to be well established, that a party, who participates in the profits of a trade or business, and has an interest in the profits, as profits, is chargeable as a partner, with respect to third persons; but if he is only entitled to receive a certain sum of money, in proportion to a given quantum of the profits, as a compensation for his labor and services, he is not thereby liable to be charged as a partner. Turner v. Bissell, 14 Pick. 192. Loomis v. Marshall, 12 Connect. 69. Rice v. Austin, 17 Mass. 197. Perrine v. Hankinson, 6 Halst. 181. 3 Kent Com. (3d ed.) 33. Gow on Part. 14-21. Story on Part. c. iv. It is true that Lord Eldon has expressed a doubt of the soundness of this distinction. In Ex parte Hamper, 17 Ves. 404, he says, “the cases have gone to this nicety, (upon a distinction so thin, that l cannot state it as established upon due consideration,) that if a trader agrees to pay another person, for his labor in the concern, a sum of money, even in proportion to the profits, equal to a certain share; that will not make him a partner; but if he has a specific interest in the profits themselves, as profits, he is a partner.” He admits, however, that the law of partnership is thus settled. Ex parte Watson, 19 Ves. 459. Ex parte Rowlandson, 1 Rose, 92. And this distinction has been confirmed by numerous subsequent decisions. In Cutler v. Winsor, 6 Pick. 335, it was decided, that an agreement between the owner and master of a vessel to divide the earnings of the vessel between them, after deducting certain fixed charges, did not render them liable to third persons, as partners. In that case, the deduction was from the gross earnings. And the agreement is substantially the same in the present case. For although, in terms, the agreement was to pay Cooper one third of the net earnings, yet that is explained by the words immediately following, by which it appears that Cooper was entitled to one third of the gross profits, after deducting certain specified charges; and that in no event was he to be liable for any losses. So the agreement in this case is precisely similar *91 to that in Loomis v. Marshall, 12 Connect. 69. In that case, French & Hubbell agreed with Marshall to manufacture his wool into cloth, and he agreed to give them, for their services and the materials they should furnish, a certain proportion of “ the net proceeds of all the cloths, after deducting incidental and necessary expenses of transporting, and other proper charges of sale.” It was not expressed in terms, to be for such compensation, but such the court held was the legal meaning of the agreement. This case was very ably discussed by the learned judge who delivered the opinion of the court, and, as it seems to us, the decision is fully sustained by well established principles. So in Reynolds v. Toppan, 15 Mass. 370, it was agreed between the master and owner of a vessel, that the latter was to receive two fifths of the net earnings of the vessel; and it was held that this did not render him liable as a partner. So in Vanderburgh v. Hull, 20 Wend. 70, where a person was employed as an agent in conducting the business of a foundry, at a salary of $300; and in addition thereto he was to receive one third of the profits of the foundry, if any were made ; and he had nothing to do with the losses ; it was held that the agent was not, either as to his employers or third persons, a partner. So in Turner v. Bissell, 14 Pick. 192, it was agreed that Bissell was to furnish wool to be worked into satinets by Root, who was to find and pay for warps for the same, and Bissell was to pay Root for working the wool, finding the warp, &c., 40 per cent, on the sales of the satinets. It was held that the defendants were not partners inter se, nor as to third persons.
These cases appear to us fully to support the defence in the present case. Some of them may perhaps appear to clash with the distinction (laid down by Lord Ellenborough in Dry v. Boswell, 1 Campb. 329, and recognized in other cases) between sharing the gross earnings and sharing the net earnings of a business or adventure. But however this may be, we think there is no sound distinction between an agreement to pay to a party a certain share of the gross profits, and an *92 agreement to pay a certain share of the net profits, as explained in the present contract; the clear meaning of the terms of which is, that Cabot, Appleton & Co. were to pay Cooper one third part of the profits, after making certain specified deductions therefrom, and Cooper clearly was not to be liable for any losses. If he had stipulated for a share in thé profits, (whether gross or net profits,) so as to entitle him to an account, and to give him a specific lien, or a preference in payment, over other creditors, and giving him the full benefit of the profits of the business, without any corresponding risk in case of loss ; justice to the other creditors would seem to require that he should be holden to be liable to third persons, as a partner. But where a party is to receive a compensation for his labor, in proportion to the profits of the business, without having any specific lien upon such profits, to the exclusion of other creditors, there seems to be no reason for holding him liable, as a partner, even to third persons. This distinction is supported by Cary, in his treatise on partnership, and Chancellor Walworth considers it as a sound one, in Champion v. Bostwick, 18 Wend. 184. And it is adopted with approbation by Chancellor Kent, in his commentaries. 3 Kent Com. (4th ed.) 25, note. The remarks of Judge Story on these distinctions are very forcible, and seem to us to be founded on sound principles. “ The question in all this class of cases,” he says, “ is first to arrive at the intention of the parties inter sese ; and secondly, if between themselves there is no intention to create a partnership, whether there is any stubborn rule of law, which will nevertheless, as to third persons, make a mere participation in the profits conclusive that there is a partnership.” — “ It is said, ‘ every man, who has a share in the profits of a trade, ought also to bear his share of the loss, as a partner.’ In a just áense, this language is sufficiently expressive of the general rule of law ; but it is assuming the very point in controversy, to assert that it is universally true, or that there are no qualifications, or limitations, or exceptions to it. On the contrary, the very cases alluded to by Lord Eldon, in the clearest terms establish that such qualifications *93 limitations and exceptions do exist.” Story on Part. <§> 36. “ Admitting, however, that a participation in the profits will ordinarily establish the existence of a partnership between the pai'ties, in favor of third persons, in the absence of all other opposing circumstances; the question is, whether the circumstances, under which the participation exists, may not qualify the presumption, and satisfactorily prove, that the portion of the profits is taken, not in the character of a partner, but in the character of an agent, as a mere compensation for labor and services. If the latter be the true predicament of the party, and the whole transaction admits, nay, requires, that very interpretation, where is the rule of law, which forces upon the transaction the opposite interpretation, and requires the court to pronounce an agency to be a partnership, contrary to the truth of the facts, and the intention of the parties ? Now, it is precisely upon this very ground, that no such absolute rule exists, and that it is a mere presumption of law, which prevails in the absence of controlling circumstances, but is controlled by them, that the doctrine in the authorities alluded to is founded;” “ and there is no hardship upon third persons, since the party does not hold himself out as more than an agent. This qualification of the rule (the rule itself being built upon an artificial foundation) is, in truth, but carrying into effect the real intention of the parties, and would seem far more consonant to justice and equity, than to enforce an opposite doctrine, which must always carry in its train serious mischiefs or ruinous results, never contemplated by the parties.” <§, 38.
These well founded remarks and considerations have great weight, and a very decisive bearing on the present case. It seems to us very clear, that the defendants never contemplated a partnership, by the contract between them. The property and the profits of the transaction belonged to Cabot, Appleton & Co. They, it is true, were bound to pay to Cooper a sum equivalent to a third part of the profits ; but if they failed so to do, Cooper’s remedy would be by action on the contract. But he had no lien on the property or profits, so as to give him a preference over other creditors. Cooper, when he applied to *94 the plaintiffs to supply him with the articles charged, showed them the contract in question, and they must be presumed to have known that the contract did not create a partnership; so that credit was given, and the sale was made, to Cooper alone. But whether, in truth, such was the case or not, we are of opinion that the plaintiffs have no right of action against Cabot, Appleton & Co.; and according to the agreement of the parties the plaintiffs must discontinue as to them, and judgment is to be rendered for them for their costs.