McIlroy vs. Adams.

## McIlroy vs. Adams.

1. PLEADING: *Uncertainty, how remedied.*
    When some of the averments of a complaint are wanting in clearness and certainty, the defendant's remedy is by motion to have the pleading rendered more definite.
2. MALICIOUS PROSECUTION.
    The averments in a complaint for malicious prosecution, that the defendants held the plaintiffs' note for collection, and falsely and fraudulently represented that they had purchased it before maturity, for the purpose of preventing the plaintiff from setting up valid defenses against the original holder, the recovery of judgment on the note in an action thereon by the defendants, suing out execution, its levy, and the damages sustained thereby, and that the judgment had been perpetually enjoined, are sufficient to sustain a judgment for damages in favor of the plaintiff.
3. EVIDENCE: *Judicial record.*
    The record of a former proceeding between the same parties is admissible in evidence; the objection that the pleading of the party who introduces the record are made evidence against the opposite party, is untenable, because it is necessary to read the entire record for a proper understanding of it.

McIlroy vs. Adams.

4. PARTNERS: *How far liable for each other's torts.*

　Partners are liable *in solido* for the tort of one, if that tort was committed by him as a partner, and in the course of the partnership, whether they all had knowledge of it or not.

APPEAL from *Washington*, Circuit Court.

Hon. J. M. PITTMAN, Circuit Judge.

*Gregg*, for appellant.

*Davidson*, contra.

HARRISON, J.:

This was an action by Adams & Bro., against Denton D. Stark and William McIlroy, for the malicious prosecution, without probable cause, of an action against them.

The averments of the complaint were: That the plaintiffs, on the 8th of September, 1873, executed to J. C. Pendleton, a note for $1032, payable ninety days thereafter, and that Pendleton, indorsed the note in blank, and the same was before maturity delivered to the defendants, who were partners and bankers under the firm name of D. D. Stark & Co., in Fayetteville, for collection. Pendleton not parting with his interest, and remaining the owner thereof.

That the defendants after the note fell due, falsely and fraudulently represented, that they were the owners of the note, and had purchased the same for a valuable consideration before maturity, and brought suit thereon in their own names against the plaintiffs in the Washington Circuit Court, and recovered judgment by default; that the plaintiffs had a good and valid defense against the note, which the defendants knew when they brought their suit, but the plaintiffs were deceived by the representations of the defendants, and supposed that they were the owners of the note and had acquired it by purchase before its maturity, and did not know any better until after the judgment had been obtained: That the defendants sued out execution on

the judgment, and the same was by their direction levied on the plaintiffs' stock of drugs and medicines, they being druggists, which were seized and taken and their store closed; and that their stock of drugs and medicines were detained from them five months, and they were dispossessed of their store thirty days:

That after the levy of the execution the plaintiffs filed their complaint in equity in said court against the defendants, for an injunction against the judgment, and upon the hearing of the cause, it was by the decree of the court perpetually enjoined.

And that whilst the said goods were in the custody of the sheriff they were damaged and reduced in value $1000, and by the seizure of their stock, and the closing of their store, their credit was ruined and their business destroyed, and they thereby sustained damage to the amount of $4000.

Stark was not served with process and did not appear.

McIlroy answered the complaint; and denied that he had made any representations concerning the note, and having had any connection whatever with or participation either in the action, or in the proceedings after the judgment was obtained, and any knowledge thereof during the pendency of the same, and denied that Stark had any authority from him to bring the action in their joint names.

A trial was had as to McIlroy, and a verdict was returned for the plaintiff for $650. He moved for a new trial, which was refused; he then moved in arrest of judgment, and that motion was likewise overruled.

He appealed.

The cause assigned in arrest of judgment is that the complaint did not state facts sufficient to constitute a cause of action.

Some of the averments in the complaint were, it would seem, wanting in requisite clearness and certainty; but the appellant

might by motion have required them to be made more certain
and definite.

Sec. 4619, Gantt's Dig., says: "The court must in every stage
of an action disregard any error or defect in the proceedings
which does not affect the substantial rights of the adverse party;
and no judgment shall be reversed or affected by reason of such
error, or defect."

It was averred that the defendants held the note only for col-
lection; that Pendleton, was still the owner of it, that the plaintiffs
had a good and valid defense against it, that the defendants
knew of their defense when they commenced their action; and
that to avoid the defense, they falsely and fraudulently claimed
to have purchased the note before maturity; that they had sued
on it in their own names and recovered judgment, the plaintiffs
believing from their representations that they were the owners
of the note and had purchased it before maturity, and not know-
ing better until after the judgment was recovered; the suing out
of the execution, its levy, and the damages sustained thereby,
and that the judgment had been perpetually enjoined.

By these averments were set forth not only a grievance and
injury to the plaintiffs, but a willful and wrongful commission of
them.    2 Green. Ev., sec. 449.

The appellant excepted at the trial to the ruling of the court
in permitting the plaintiff to read to the jury the record in their
suit for injunction.    We are unable to see any objection to
the admission of this record in evidence.    It was a suit between
the same parties as were then before the court, and it was averred
in the complaint that the judgment had been enjoined by the
decree in it.    The answer in that case was put in jointly by Stark
and McIlroy, and it admitted the institution of the suit, the re-
covery of the judgment, and the suing out and levy of the
execution as alleged in the complaint in this case, and also that

McIlroy vs. Adams.

they had no other interest in the note except as holders for collection and as collateral security for claims of other persons in their hands against Pendleton; and it appears from it that the decree was rendered by the consent of the defendants. The objection urged against its admission, that the allegations of the complaint were made evidence against the defendants is untenable, because to read the answer and the decree, it was necessary for a proper understanding of them, also to read the complaint. 1 Green. Ev., secs. 511, 512.

An exception was also taken to the admission of the deposition of W. H. Etter. but upon what ground does not appear.

A general objection to a deposition reaches the relevancy, competency, or legal effect of the testimony only; and will not be considered as extending to any matter of form or question of regularity, or authority in respect to the taking of such deposition. *Blackburn* v. *Morton*, 18 Ark., 384.

He deposed; that he was, in 1873, a banker in Fayetteville, and that the note was deposited with him by Pendleton as collateral security for acceptances and other obligations of his belonging to St. Louis merchants and others, in his hands for collection, and that he, on the 20th of October, 1873, turned the note and the acceptances and matters it was intended to secure, over to D. D. Stark & Co.

This evidence clearly supported the complaint, and the only possible or seeming objection that might have been made to it, that we can conceive of, is that it was unnecessary, as the answer of the appellant did not deny and put in issue the averment, that the defendants held the note only for collection.

The appellant read to the jury the articles of partnership between himself and Stark, by which it was agreed, that they should form a partnership by the firm name of Denton D. Stark & Co., "in the buying and selling of exchange, gold, silver,

bonds and whatsoever to the said business belongs," to which Stark was to give his entire attention; and he testified that the partnership was strictly confined to the business of banking, and it had no authority from him to engage in anything which did not appertain to that; that he had nothing whatever to do with the management or control of the business, and the same was attended to and conducted solely by Stark. That the purchase of notes was no part of the business of the firm, and if Stark claimed the note as the property of the firm, it was without authority from him; that he had no knowledge of the note, nor of the suit and the proceedings to collect the note during their pendency, and they were unauthorized by him.

He asked, with others, the following instructions which the court refused to give, viz.:

*Fourth*—The obtaining of money, or the attempt to obtain money by fraud for the use of a firm, does not render the partners liable as such, without their participation in or consent to the fraud.

*Twelfth*—Unless McIlroy individually participated in falsely and fraudulently procuring the judgment against the plaintiffs, and causing the alleged wrongs to be committed, the verdict should be for him.

*Fifteenth*—The plaintiff cannot recover against McIlroy, unless it be proven that the defendants fraudulently prosecuted the action to judgment, knowing that they had no right to recover, and that McIlroy personally had such knowledge.

The instructions were properly refused. "Partners are liable *in solido* for the tort of one, if that tort were committed by him as a partner, and in the course of the partnership." Par. Part., 150. And Judge Story says: "It has been well remarked by a learned writer that 'although the general rule of law is that no one is liable upon any contract, except such as are privy to it

yet this is not contravened, by the liability of partners, as they may be imagined virtually present at, and sanctioning the proceedings they singly enter into in the course of trade; or as each vested with a power enabling them to act at once as principals and as the authorized agent of their copartners.'" "The principle," he says, "extends further, so as to bind the firm for the frauds committed by one partner in the course of the transaction and business of the partnership, even when the other partners have not the slightest connection with, or knowledge of, or participation in the fraud; for, as has been justly observed, by forming the connection of partnership the partners declare themselves to the world satisfied with the good faith and integrity of each other, and implicitly undertake to be responsible for what they shall respectively do within the scope of the partnership concerns." Sto. Part., sec. 104, 108.

It was objected also, that the evidence did not sustain the verdict; that there was no proof of McIlroy's assent to the acts of Stark; but we have already seen that none was necessary. The evidence as to the damages directly occasioned by the levy was ample and every other material fact was admitted or proven.

The judgment is affirmed.