MEHAFFY v. WILSON.

Opinion delivered April 7, 1919.

1. PARTNERSHIP—LIABILITY—TORTS.—A partner is liable for a co-partner's torts if committed in the course of the partnership business.

2. PARTNERSHIP—LIABILITY.—To establish a liability against a partner for the acts of others, it must appear that the partnership was formed by express agreement or that the party sought charged has been guilty of some act by which he is estopped from proving that he is not in fact a partner.

3. PARTNERSHIP—WHEN CREATED.—A contract, when considered as a whole, may create a partnership, though the parties expressly provide that such is not their intention.

4. PARTNERSHIP—PRESUMPTION.—Where there is a joint enterprise and a division of profits as such between the parties, it is a cogent circumstance tending to prove the existence of a partnership, and, as to third parties, the presumption is conclusive unless proof is adduced to overcome it.

5. PARTNERSHIP—CONSTRUCTION OF CONTRACT.—An agreement that a timber and mill owner should receive specified prices for his timber and compensation for his services and the use of the mill, residences, etc., out of a certain proportion of the profits, if there were profits, did not make him, as to third persons, a partner of the operator of the mill.

Appeal from Hempstead Circuit Court; *G. R. Haynie*, Judge; affirmed.

STATEMENT OF FACTS.

This action was instituted by the appellant, as natural guardian and next friend of Pearl Mehaffy, against Matthew Wilson and Ralph Russell.

The appellant alleged that the defendants were partners in a sawmill at Kilgore, Hempstead County, Arkansas; that Pearl Mehaffy was a minor thirteen years of age and employed by the defendants to work on the yard at said mill; that Pearl Mehaffy was inexperienced with machinery and mill work, and that the foreman of the mill knew this fact; that the foreman negligently instructed Pearl Mehaffy to remove sawdust from under the saw of said mill which necessitated his working in close proximity to a line shaft while same was revolving

at a high rate of speed; that the defendants negligently failed to warn him of the danger incident to said work; that they negligently failed to box or guard the line shaft, and negligently allowed a strap of belting to be tied about said line shaft where said Pearl Mehaffy was instructed to work, and negligently permitted the same to remain on the shaft with one end of the strap loose and flying around the shaft as the same revolved; that the defendants negligently failed to use due care to inspect said shaft; that defendants failed to exercise ordinary care by reason of the negligence set forth, to provide Pearl Mehaffy a safe place to work; and that by reason of said negligence the end of the strap caught Pearl Mehaffy by the hand causing him to come in contact with the line shaft and his body to be whirled around said shaft tearing his left arm from his body, causing him great pain, suffering, and mental anguish to his damage in the sum of $20,000, for which judgment was asked.

The defendants were nonresidents of the State and were duly served with notice by publication. The defendant Matthew Wilson filed an answer denying all the material allegations of the complaint and setting up the affirmative defense of contributory negligence.

The plaintiff introduced testimony which tended to sustain the allegations of his complaint as to negligence and as to the injury inflicted, and also introduced a contract between one Matthew Wilson, party of the first part, Ralph Russell, party of the second part, and J. D. Stuart, or such other person as Wilson from time to time might name, as party of the third part.

The recitals of the contract show substantially the following: That Wilson was the owner of about 10,000 acres of land in Hempstead, Pike and Nevada Counties, in this State, upon which there was estimated to be 64,-889,500 feet of standing timber of various kinds, which it was agreed had varying values, according to kind, from $3 to $10 per thousand feet board measure.

The contract was paragraphed and the paragraphs were substantially as follows:

1. That the contract did not create a partnership or the relation of principal and agent.

2. That the title to all the lands, timber, mills, and other property furnished by Wilson should remain in him.

3. That Russell was to repair the buildings and equip the mill and maintain the same so as to manufacture timber upon the lands for sale, and for the proceeds of which he was to account to Wilson.

4. That the sales and collections were to be made by one Stewart, who was to have supervision of the books and also render general services in the operation. As compensation for his services Stewart was to be given a certain amount per week by Russell and an additional amount by Wilson of 10 per cent. of 50 per cent. of the net profits which should be received by Wilson. That Russell should receive so much per week and the remaining 50 per cent. of any net profits realized in cash out of the operations. Wilson was to receive for the timber and logs removed from the land certain prices, designated for certain kinds of timber and for such as were not designated the prices were to be agreed upon by arbitration.

5. That Russell was to pay Wilson for all saw logs upon the land which were not used for repairing the mill and which were injured by delay in manufacture, the same price as for standing trees.

6. That Wilson and Russell were to contribute equally to the cost of constructing any tramways or additional mill which they might decide to erect in the future. Their contributions to be paid back with 6 per cent. interest out of the profits of the operation before the division of the net profits equally between them.

7. That the order of the charges or claims upon the moneys realized out of the product were to be as follows:

*First.* Taxes, insurance, expenses of the lands, buildings, etc.

*Second.* The price of stumpage to Wilson.

*Third.* Payment to Russell for wages of men (other than himself and Stewart) and of teams.

*Fourth.*  Wages per week for Russell and Stewart.

*Fifth.*  Repayment to Russell for repairs, and other costs of operation, including the sales.

*Sixth.*  The cost of new mills and any railway or tramway.

That there shall be no charge or lien of any kind created either directly or indirectly by Russell or Stewart on the land of Wilson

8.  Russell was to carry on all the operations.

9.  That the money received from the operations should be deposited in the bank, designated by Wilson. There was to be kept in the Bank of Prescott money necessary for wages and petty cash required in the operation.  The other moneys were to be deposited in Canada in the name of Stewart or such other person as might be agreed upon in trust to carry out the agreement.  That Stewart should sign all checks and keep all vouchers for money paid out, Russell having the right, in order to keep track of these checks and vouchers, to countersign them.

10.  All leases to be made by Wilson through Stewart approved by Russell.  Wilson to pay all the arrears of taxes and receive all arrears of rent.  The failure of title should not invalidate the agreement or make either party liable to the other.

11.  That Russell upon completion of the operations was to have all the property which he had put in and paid for, which he had not received any repayment for.

12, 13, 14, 15, are not important as showing the relation between Russell and Wilson.

16.  That Wilson was to have access at all reasonable times to the books, accounts, etc.

17.  That Wilson might discharge Stewart and engage another man for Russell who should have the same duties and powers as Stewart.

18.  That either Wilson or Russell could terminate the agreement by three months' notice in writing to the other of his intention to do so.

19.  That Wilson was not to be personally liable for anything or on any account under the agreement except for contributing money under clause 6.

20.  That Russell upon failure to carry out the operations as provided in the contract, or any other breach of the agreement by Russell continued for a period of four weeks, should forfeit all his rights thereunder and give Wilson the right to take possession and carry on the operations.

21.  That Russell was to deposit the sum of $2,000 in the Standard Bank of Canada as the guaranty for the faithful performance of his contract.

22.  Wilson was to have the right to take possession of any section or one-quarter section of the land, where Russell had stopped operations thereon.

23.  That any person who advanced money to Russell upon default by Russell might notify Wilson by writing and assume Russell's contract upon giving Wilson the same security as Russell had done.

24.  That the provisions in regard to Stewart should apply to any other nominee of Wilson.

25.  That the provisions relating to the rights and duties of Wilson and Russell should extend to their heirs, executors, administrators and assigns, but Russell could not assign any right without first obtaining the written consent of Wilson.

Upon motion of the defendant the contract was excluded from the jury, to which ruling the plaintiff duly excepted.

The defendant, thereupon, moved the court to instruct a verdict in his favor, which motion the court granted, to which the plaintiff duly excepted.

From the judgment in favor of the defendant is this appeal.

*U. A. Gentry, Lemley & Lemley* and *O. A. Graves,* for appellants.

The court erred in directing a verdict for defendant, Wilson, in excluding the partnership contract from

the jury and in holding that as a matter of law Wilson was not liable, either as principal or partner. Wilson under the contract was a partner and liable for torts. 32 Ark. 315; 36 *Id.* 268. The contract and other circumstances show him to have been a partner. Such was the intention of the parties, the *legal* intention, and that is the true test. 30 Cyc. 360; 34 Vt. 121, 80 Am. Dec. 670; 20 Ore. 132, 11 L. R. A. 149; 30 Am. Dec. 596; 30 N. E. 442; 87 Ark. 416. Participation in the profits is not the sole criterion as to creditors. 44 *Id.* 423; 63 *Id.* 518; 74 *Id.* 437; 80 *Id.* 23.

See also as to the partnership 169 Pa. 480; 30 Cyc. 390; 110 S. W. 314; 14 Barb. 471; 1 Bosw. 490; 18 Wend. 175; 31 Am. Dec. 376; 169 Pa. 480; 32 Atl. 578; 23 Wis. 254; 17 *Id.* 141, 84 Am. Dec. 734; 20 L. R. A. 776. Wilson was really the principal and liable as such. *Supra.*

*McRae & Tompkins,* for appellee.

The court was right under the contract and all the facts in excluding the contract and in directing a verdict for Wilson, as he was neither a principal nor a partner nor liable as such. 26 Ark. 154; see also 5 *Id.* 61; 44 *Id.* 427; 93 *Id.* 57; 74 *Id.* 437; 87 *Id.* 412; 80 *Id.* 23; 63 *Id.* 518; 91 *Id.* 26; 93 *Id.* 521; 97 *Id.* 390; 207 S. W. 221; 30 Cyc. 380.

The doctrine of "holding out" as a partner has no application in *torts.* 1 Lindley on Partnership, pp. 42-47; 52 L. R. A. 675. The contract states, "It is not a partnership such as was clearly the intention of the parties and this should prevail, especially as to third parties." 133 Fed. 462; 58 Conn. 413; 51 N. J. L. 103; 22 Vt. 181; 18 L. R. A. (N. S.) 975, and notes. 80 Ark. 23 in note to 10 Ann. Cas. 135. Mere participation in profits and losses is not sufficient. 207 S. W. 221. The usual elements of copartnership are lacking here. 54 Ark. 384; 2 H. Blackstone, 235; 8 H. L. C. 260; 1 Ont. App. 115; 19 Ont. 83; 44 Ark. 425-428; 63 *Id.* 518; 96 Mich. 160; 144 *Id.* 274; 45 Mich. 188.

WOOD, J., (after stating the facts). The testimony was sufficient to prove a cause of action in favor of the appellant against Russell and the only question for our consideration is whether or not a partnership relation was created by the contract between Russell and the appellee. For if Russell and Wilson were partners then Wilson would be liable for the torts of Russell committed by the latter as a partner in the course of the partnership business, whether Wilson had knowledge of such torts or not. *McIlroy* v. *Adams,* 32 Ark. 315; *McClure* v. *Hill,* 36 Ark. 268.

But if the contract under review did not create the relation of partnership between Russell and Wilson then the latter would not be held liable for the torts of the former, because there is no testimony in the record to warrant the conclusion that the appellee by his conduct had caused Pearl Mehaffy, the employee, to believe that Russell was the partner of appellee in the sawmill, in the operation of which Mehaffy was injured.

In *Haycock* v. *Williams,* 54 Ark. 384, we held, quoting syllabus: "To establish a liability against a party as a partner for the acts of others, it must appear that a partnership was formed by express agreement, or that the party sought to be charged has been guilty of some act by which he is estopped from proving that he is not in fact a partner." See also *Beecher* v. *Bush,* 45 Mich. 188; *Miller* v. *Simpson,* 101 Va. 476, 59 S. E. 578, 18 L. R. Ann. (N. S.), 962, case note subdiv. 6, p. 988.

Recurring then to the question as to whether the contract created a partnership relation a careful analysis of it shows that it is lacking in many of the essential elements of such relation.

In the recent case of *Wilson* v. *Todhunter,* 137 Ark. 80, we quoted from the Supreme Court of Missouri in the case of *Distilling Co.* v. *Milson,* 172 Mo. App. 612, as follows: "Mere participation in the profits and losses of a business, alone, would not necessarily make a participant a partner. Whether in fact a partnership exists depends upon the intention of the parties, to be discovered from

the contract into which they enter, construed in the light of all the facts and circumstances that obtain." See also *Buford* v. *Lewis,* 87 Ark. 416, where we said, "Whether a given agreement amounts to a partnership between the persons themselves is always a question of intention."

The contract is lengthy and it could serve no useful purpose to discuss its provisions in detail. After the preamble the first paragraph of the contract expressly provides that nothing contained therein is intended to create a partnership. While this language is not conclusive upon that issue yet if there is nothing in the subsequent language of the contract in conflict with such expressed intention, due force and effect should be given to it.

It is undoubtedly true, and many of the authorities so hold, that if the language of the contract when considered as a whole creates the partnership relation then it should be so construed, even though the parties expressly provide that such is not their intention. *Fougner* v. *First National Bank,* 141 Ill. 124; *Loomis* v. *Marshall,* 30 Am. Dec. 596, 30 N. E. 442; *Flower* v. *Barnekoff,* 20 Ore. 132, 11 L. R. A. 149, 30 Cyc. 360. See also *Miller* v. *Simpson, supra,* and *Beecher* v. *Bush, supra,* and many other cases cited in case note of *Miller* v. *Simpson, supra.*

But here there is nothing in the subsequent language of the contract out of harmony with the expressed intention not to create a partnership. On the contrary, we are convinced that when all of the provisions of the contract are considered it can not be construed as creating a partnership relation between Russell and Wilson.

Where there is a joint enterprise and a division of the profits as such between the parties it is a cogent circumstance tending to prove the existence of a partnership, and, as to third parties, the presumption is conclusive unless proof is adduced to overcome it. See *Buford* v. *Lewis, supra; Rector* v. *Robins,* 74 Ark. 437; *Johnson* v. *Rothschild,* 63 Ark. 518.

Now, there is nothing before us except the construction of the written contract. No presumptions are to be

indulged, and the question as to the intention of the parties must be gathered solely from the language of the instrument taken as a whole.

Wilson was the sole owner of the mill, and the machinery that caused the injury. There was no community of interest in the property existing at the time of the injury, no division of profits or losses as such. Wilson was not responsible for any losses and did not share in the profits as profits, but only was to receive a certain price for his timber and then compensation for his services and use of the mill, residences, etc., out of a certain proportion of the profits, if there were profits. These conditions would not make him a partner of Russell. *Haycock* v. *Williams, supra.* See also *Lacotts* v. *Pike,* 91 Ark. 20-28; *Denny* v. *Cabot,* 47 Mass. 82-90; 1 Rowley on Part., § 78.

Our conclusion is that when the essential tests for determining partnership are applied to the contract under review, the trial court was correct in holding that it was not a partnership agreement.

The judgment is, therefore, affirmed.