## STONE *v.* RIGGS.

### Opinion delivered March 17, 1924.

1. PARTNERSHIP—SHARING IN PROFITS.—To constitute a partnership, there must be a community of interests *inter se,* and it is necessary that the parties share the profits and losses, and a sharing in the profits of a business does not render one a partner where he receives such share only as compensation for services or as rent or hire for property furnished by him.

2. PARTNERSHIP—WHEN NOT CREATED.—An agreement between two persons interested in developing oil lands and the owners of a drilling outfit, which required the owners of the outfit to deliver it for use in the drilling of wells, and that they should receive one-eighth in the leases, did not render the owners partners with those interested in the development of the wells.

Appeal from Howard Circuit Court; *B. E. Isbell,* Judge; affirmed.

### STATEMENT OF FACTS.

Tom Stone and four other persons brought separate suits in attachment against Alphonzo Riggs, William Pautz, J. W. Butler and G. W. McMurray.

The complaint in each case alleges that the defendants entered into an agreement of partnership for the purpose of developing certain oil and gas territory in Howard County, Arkansas, and that, in the prosecution of their business, the defendants became indebted to the plaintiff for services rendered in the amount sued for.

The complaint also alleges that the defendants are all nonresidents of the State, and are about to remove a material portion of their property out of the State, without leaving enough to satisfy the plaintiff's claim.

A bond for attachment was duly executed for each plaintiff. A general order of attachment was issued in each case, and was levied on certain lands belonging to the defendants.

J. W. Butler and G. W. McMurray filed a separate answer in each case. They stated that they composed the firm of the Butler-McMurray Drilling Company, and denied that they had formed a partnership with Alphonzo

Riggs and William Pautz. They denied that they were indebted to the plaintiff in any sum whatever.

All five cases were consolidated for the purpose of trial. An agreed statement of facts was filed in the consolidated case. It was agreed that certain machinery, drilling rigs, and tools, upon which writs of attachment in these cases had been levied, belonged to the Butler-McMurray Drilling Company, and that they were furnished to Alphonzo Riggs and William Pautz, in pursuance of the terms of a written contract introduced in evidence. During the drilling of the well mentioned in the written contract referred to, neither member of the firm of the Butler-McMurray Drilling Company had anything to do with the work in any manner, except to visit the well on two or three occasions, when they had been notified that the drillers had struck oil. They only visited the well then for the purpose of witnessing the test.

It was also agreed that the accounts of the plaintiffs, as stated in their several complaints, were correct, and that they were for labor performed in digging said well. The written agreement between the defendants, which was signed by them, is as follows:

"This memorandum of agreement, made and entered into this 29th day of April, A. D. 1922, at Mineral Springs, Arkansas, by and between Alphonzo Riggs, hereinafter called the first party, and William Pautz, hereinafter called the second party, and Butler-McMurray Drilling Company, a copartnership, of Shreveport, Louisiana, hereinafter called third parties.

"Witnesseth: That first and second parties hereto have jointly undertaken to develop certain acreage in townships ten and eleven south, range twenty-seven, twenty-eight and twenty-nine west, Howard County, Arkansas, for oil and gas, upon the conditions hereinafter set forth, and third party has agreed to contribute the use of a rotary drilling rig, tools and equipment to be used in drilling not more than two wells upon said acreage.

"It is agreed that the parties hereto shall have each an undivided interest in all acreage leased by either of first or second parties, directly or indirectly, for oil, gas and other minerals in said territory above described, in the following proportions, that is to say, first party shall have an undivided one-half interest in said acreage, second party shall have an undivided three-eighths interest, and third party shall have an undivided one-eighth interest in said acreage; but it is agreed, for convenience, that all leases shall be taken in the name of first party, or transferred to him, and he shall hold the said interest of second and third parties therein in trust for their benefit. This contract shall apply to all leases on lands located in said territory heretofore taken in the name of first party or transferred to him.

"That the financing of said leases shall be undertaken by said Riggs, and shall be done by developing said territory in blocks of about three thousand acres each, more or less; that the first block shall consist of block of three thousand acres, more or less, including the Deaver farm and lands adjoining or adjacent thereto.

"That a block of one hundred and sixty acres of the Deaver farm, more particularly described as follows: (Here follows a description of the lands) of Howard County, Arkansas, upon which a well is now being drilled by the first and second parties hereto, shall be reserved by said Riggs, and by him the profits, if any, from the oil or gas discovered thereunder shall be divided into one thousand equal undivided parts, so that interests of one-thousandth parts of the net profits therefrom, after paying the necessary operating expenses, may be granted as a bonus with each one hundred dollars ($100) paid for acreage to said Riggs, as hereinafter provided for, free and clear of any claim or title thereto by said second and third parties, or any person claiming under them, but any interest in the profits from said one hundred and sixty acre tract not so granted shall be held in the proportions by the parties hereto as hereinbefore provided for.

"It shall be provided, in any instrument conveying said bonus interests, that a sum not exceeding fifty per centum (50 per cent.) of the net profits accruing to any interest in the said one hundred and sixty acre tract, including the interests of the parties hereto, may be reserved for the costs and expenses of drilling one or more additional wells on said tract, as the same may be justified in the opinion of said Alphonzo Riggs, and for the purpose of obtaining cash to pay for the costs and expenses of completing the said well now drilling, and for paying the rentals due or becoming due on leases included in said block, and other necessary or incidental expenses, including an additional well on said one hundred and sixty acre tract. If the first shall not show sufficient profit, and further drilling is deemed advisable by the parties hereto, the said first party shall divide the lands covered by leases under this agreement, adjacent or adjoining said one hundred and sixty acre tract, into lots of such size as the said first party shall determine, which said lots shall, by said first party, be sold for such sums per acre as can be obtained by said first party, but in varying amounts, as may be determined by the distance of said lots from the well now drilling.

"Any such lots so sold shall be transferred by said first party, by an appropriate instrument, conveying the title thereto free and clear of any claim or interest therein of the second and third parties, or any one claiming under them, but said first party shall faithfully account for all sums so received by him and of all disbursements made by him, but, however, any of said acreage as shall not be so sold shall be held by said first party, subject to the undivided interest of said second and third parties as herein provided; from the sums so received said first party shall first deduct any moneys heretofore or hereafter advanced by him for expenses and costs incurred in drilling said well, paying rentals, and other expenses; he shall also deduct from such sums the necessary expenses of selling said lots, including commissions and the costs of having the same certified under the Ohio

blue-sky act; with each conveyance of said lots the first party shall execute an appropriate instrument granting said bonus interest in said one hundred and sixty acre tract in the proportion of one-thousandth part for each one hundred dollars received by him as purchase price for said acreage.

"It may be hereafter agreed upon between the parties hereto to extend this contract to additional leases upon other parts of Howard County, or elsewhere, for development upon like plan, or if, in the opinion of any party, it may not be advisable to continue paying rentals upon leases under this agreement, then the other parties shall have prompt notice thereof, and shall have, if they so desire, the right to elect to pay any such rentals and assume such leases as the separate property of the said parties. Upon the completion of the promotion and financing of said first block, the development of the remainder of the leases covered under this agreement shall be undertaken by the parties hereto in like manner, at such place and time as they shall hereafter determine.

"It is understood and agreed between the parties that this agreement shall apply to all leases heretofore assigned or acquired by Henry K. Gustin, and which are now claimed by said Pautz, in an action pending in Howard County Circuit Court, and their interests therein shall be in like proportion as herein provided.

"The said tools and equipment heretofore delivered by third parties, which are now in use in drilling a well on the Deaver farm, in said county, shall be used for drilling only one additional well under this agreement, and it is agreed that the well now drilling shall be prosecuted with diligence and without unnecessary delay, and that said tools and equipment shall be redelivered to third party, f. o. b. cars, at Mineral Springs, Arkansas, or such other place, at not greater expense, as they may designate, immediately after completing said second well, if drilled, but in no case later than five months from the date of this agreement. All expenses incident to the upkeep of said tools and equipment during their use by

first and second parties hereto shall be paid by said parties; said tools and equipment shall be redelivered by first and second parties to third parties in as good condition as when received by second party hereto, ordinary wear and tear excepted; first and second parties shall bear all expense of labor, material and other costs incurred in putting down the said wells, and expressly agree to hold third parties harmless from any loss or liability by reason thereof, and to indemnify them against any claim of any person for any such costs and expense.

"In consideration of the covenants and agreements of first and third parties hereto, second party agrees that he will superintend the drilling of at least two wells in said territory, including the well now drilling, and that he will diligently prosecute the obtaining of additional leases in said territory for the benefit of the parties hereto.

"In witness whereof the parties hereto have signed their names in triplicate, the day and date first above written."

The case was tried before the circuit court sitting as a jury. The court found that there was no partnership between the Butler-McMurray Drilling Company, or the members thereof, and Alphonzo Riggs and William Pautz. Hence it was held that the Butler-McMurray Drilling Company was not liable to the plaintiffs. It was adjudged that the Butler-McMurray Drilling Company go hence without day.

The court further found that Alphonzo Riggs and William Pautz were indebted to the plaintiffs in the amounts sued for, and the attachment which had been levied on their land was sustained.

To reverse that part of the judgment holding that neither the Butler-McMurray Drilling Company nor the members thereof were partners with Alphonzo Riggs and William Pautz, the plaintiffs have duly prosecuted an appeal to this court.

*Jas. S. McConnell,* for appellants.

As fixing liability to creditors, the test of a partner-ship is whether the business has been carried on in behalf of the person sought to be charged as a partner, *i. e.,* whether he stood in the relation of a principal towards the ostensible traders by whom the liabilities have been incurred, and under whose management the profits have been made. 44 Ark. 427. Definition of partnership; 80 Ark. 23. It is not necessary that the partners shall call themselves such. If they engage in a joint business enterprise, each putting in capital or labor, with an agreement to share profits as such, it is a partnership, whatever the parties may call it. 145 Wis. 31. It exists as the result of a voluntary contract, and not solely by operation of law. 54 Ark. 384. There was here an agreement of partnership, as appears by the contract, a community of interest, a common undertaking for the purpose of making profits and provision for sharing in the profits. 93 Ark. 521.

*W. P. Feazel,* for appellees.

Appellants in argument concede that, in order to create a partnership between these parties, there must be a joint undertaking between them to develop the acreage for oil and gas. This being true, it necessarily follows that, if there be no joint undertaking between them, there can be no partnership. The contract must be the guide in determining the relation existing between the parties. The case is ruled, we think, by 94 Ark. 505; 137 Ark. 281. Participation in the profits of a business does not necessarily create a partnership interest in the business. 137 Ark. 80; 138 Ark. 281; 152 Ark. 465. In order to constitute a partnership, the parties must have joined or associated themselves together to carry on a trade or undertaking for their common benefit, each contributing property or services in the enterprise in which the parties have a community of interest, and the parties sharing in the profits and losses. 93 Ark. 521; 94 Ark. 505.

HART, J., (after stating the facts). It is conceded by counsel for the plaintiffs that the sole question upon

this appeal is whether the legal effect of the written agreement entered into between the defendants, and which is copied in our statement of facts, is such that the Butler-McMurray Drilling Company, or the members thereof, became associated in business as partners with Alphonzo Riggs and William Pautz.

The general rule is that to constitute a partnership there must be a community of interests *inter se,* and that the parties should share the profits and losses. A well-known exception to the general rule is that, where one is only interested in the profits of a business as a means of compensation for services rendered by himself, or for the rent or hire of property furnished by him in the prosecution of the business, he is not a partner. All the cases fully sustain the doctrine that, where the profits are merely a measure of compensation, no partnership is created.

It is admitted by counsel for plaintiffs that the effect of the first part of the agreement is that Riggs and Pautz agreed to transfer to Butler and McMurray a one-eighth interest in the leases which they held for the use of a drilling rig and tools of the Butler-McMurray Drilling Company.

It is insisted, however, that the common property of all the parties was the leases, and that the latter part of the contract, which placed upon Riggs the duty of developing and selling the leases in small lots and accounting to the parties according to their respective shares, after paying all expenses, made them partners. They rely upon the principles of law decided in cases like *Beebe* v. *Olentine,* 97 Ark. 390, and *Hayes-Thomas Grain Co.* v. *Wilcox,* 144 Ark. 621.

In the first mentioned case, the parties entered into a contract to purchase jointly, for the purpose of speculation, numerous tracts of land. Each was to pay an equal amount of the purchase price and to share equally in the final profits arising from future sales. The court held that this showed an intention on their part to form a partnership for the purchase and sale of timber lands.

This had all the elements of a partnership. The parties, by their contract, engaged in a joint enterprise and shared the profits and losses equally.

Neither do we think the case last cited is in point. In it the A. F. Wilcox Contracting Company and the J. R. Vansant Construction Company entered into a contract in which there was a community of interest between them in a contract between the contracting company and an improvement district and the profits arising therefrom. The agreement between the construction company and the contracting company was that the former would finance the latter and advance all sums of money to pay for work, labor and materials used in improving the street, as provided in the contract between the improvement district and the contracting company. The court said that there were all the elements of a joint enterprise and a joint contribution to a common end and a sharing of profits. This created a partnership between the contracting company and the construction company.

We do not think the written contract entered into between the defendants in the case at bar, by its terms, or on its face, constituted a partnership. Under the agreement the Butler-McMurray Drilling Company hired to Riggs and Pautz its drilling outfit, to be used in drilling not more than two oil or gas wells upon certain leases owned by Riggs and Pautz, and they were to receive as compensation for the use of their equipment a one-eighth interest in the leases. Butler and McMurray were not generally interested in the development of the leased property, but only had a special and specific interest, and were in no sense partners. The agreement provides that the drilling equipment should be used in drilling not more than two wells upon the leases. It provides that the drilling shall be prosecuted with diligence, and that the drilling equipment shall be redelivered to Butler and McMurray immediately after completing the second well, if drilled, but in no case later than five months from the date of the agreement.

It was further provided that all expenses of the upkeep of the equipment during its use by Riggs and Pautz should be paid by them and that the equipment should be turned back to Butler and McMurray in as good condition as when received, ordinary wear and tear excepted.

The agreement further provided that Riggs and Pautz should bear all the expense of labor, materials, and other costs in putting down the wells. Butler and McMurray had nothing to do whatever with the drilling operations.

It will be noted that the agreement provides that the parties may, by further agreement, extend the contract to additional leases upon other parts of Howard County for development, upon a like plan or such other plan as may be provided by an additional contract.

Thus it will be seen that the written agreement provides for a future arrangement with Butler and McMurray in case the business proved to be profitable, but it nowhere states that they were going in as partners or refers to them as such. Riggs and Pautz assumed the entire responsibility for the drilling operations, and Butler and McMurray had no voice whatever in the work of drilling for oil and gas. They only received a certain interest in the leases for the use of their drilling machinery.

The circuit court was right in holding that they were not partners. We think the agreement on its face and the attending circumstances bring this case within the principles of law decided in *Mehaffy* v. *Wilson,* 138 Ark. 281. In that case Wilson owned certain timber lands and a sawmill outfit, which he furnished to Russell for the purpose of cutting the timber and manufacturing it into lumber. The contract specified that Wilson was to be paid for his timber at a stipulated price and that he was to receive a part of the net profits as compensation for the use of the sawmill and other buildings on his land. The court held that Wilson was the sole owner of the mill and machinery, and that there was no community

of interest in the property.   Wilson was not responsible for any losses and did not share in the profits as profits, but was only to receive a certain per cent. of them as compensation for his services and the use of his mill and other houses.   The court held that these conditions did not constitute a partnership between him and Russell.

That case is directly in point, and the facts are so similar in kind as to make it decisive of the question considered on this appeal.   We are not able to perceive any distinction existing between the two cases, and hold that the principles decided in it are conclusive of the case at bar.

This was the view taken by the circuit judge upon the trial of the case, and it follows that the judgment of the circuit court was correct and will be affirmed.