JONES *v.* BOEN.

4-4580

Opinion delivered April 5, 1937.

*Shouse & Walker,* for appellant.

*J. H. Brock, Rose, Hemingway, Cantrell & Loughborough* and *Virgil D. Willis,* for appellees.

SMITH, J. In 1928, J. C. Jones left his home in Kentucky and came to northwest Arkansas. He settled first at Ponca in Newton county, and later at Harrison, where he has since resided. He engaged in the stave and timber business, but lacking capital he enlisted J. M. Bryant & Sons, of Clarksville, Arkansas, in his operations. He and the Bryants entered into a written contract, which

was offered in evidence, by the terms of which the Bryants furnished the machinery and the money to finance his operations and became exclusive agents for the sale of his finished products, the Bryants receiving fifty per cent. of the net profits. Jones bought timber, ran the mills, and operated the business under the name of the J. C. Jones Stave Company.

Appellee Boen, prior to 1928, lived at Clarksville, where he, too, manufactured staves for the Bryants under a contract by which the latter furnished him operating capital. In 1928, Boen was appointed deputy United States marshal and removed to Harrison. Boen admitted this was a position which was supposed to occupy all his time, but in the spring of 1933 he procured and operated a stave mill and sold staves which he manufactured to the J. C. Jones Stave Company. In May of that year, Boen assisted Jones in buying a tract of land at a price which showed him to be a good judge of timber and a shrewd, close trader. Jones requested Boen to look out for other timber. At that time there was no contract of any kind between them. Jones learned of some timber lands for sale in Missouri, and Boen went with him at his invitation to inspect them. They made several other trips to Missouri together before anything was said and agreed upon between Boen and Jones. Boen testified that upon their return from one of these trips that subject was taken up, and they entered into a contract by the terms of which he would locate and purchase timber, while Jones furnished all the money and paid all the expenses, and when the timber so purchased had been manufactured they would divide the profits equally, in other words, would become partners in the enterprise. The profits were to be divided on this basis. When the timber on a particular tract of land had been manufactured they would determine the stumpage value of the timber when cut and the purchase price would be subtracted therefrom and the difference equally divided.

Boen testified that this agreement was reached and this partnership entered into in a conversation lasting five or ten minutes after they had stopped their car on the

side of the road to discuss and settle this question. No other details of the partnership were discussed or agreed upon. Nothing was written or signed then or later to evidence the contract. Jones denied that any such conversation occurred or that any such agreement was made. His version is that Boen agreed to employ such time as he was able to spare from his official duties and should be paid a reasonable compensation for his services.

The Jones Stave Company purchased timber adapted to the manufacture of staves on 33,966 acres of land. Payments were made by drafts drawn on Bryant & Sons Stave Company.

This suit was brought by Boen against Jones upon the theory that they had formed a partnership, and an accounting was prayed. The court found that a partnership existed, and that stumpage profits of $24,210 had been earned, and a decree for one-half of that amount was rendered, not only against Jones, but against the Bryant Stave Company as well. This was done upon the theory that Jones and the Bryant Stave Company were partners in Jones' operations and that both were liable as partners. The Bryant Stave Company was not made a party until after all the testimony had been taken. The testimony of the Bryants had been taken, and the written contract between them and Jones was offered in evidence. There is no dispute as to its terms. This contract was to the effect that Jones should be furnished money by the Bryants to buy stave timber lands and manufacture staves. The Bryants were to market the staves, and the net profits were to be equally divided. That such agreements do not constitute a partnership has been frequently decided. *Haycock* v. *Williams*, 54 Ark. 384, 16 S. W. 3; *Mehaffy* v. *Wilson*, 138 Ark. 281, 211 S. W. 148; *Stone* v. *Riggs*, 163 Ark. 211, 259 S. W. 412.

It was error, therefore, to render a decree against the Bryants upon the theory that they were partners of Jones. There was no connection in the relation between the Bryants and Jones with the relation between Jones and Boen. Moreover, it was error to render judgment against the Bryants on testimony taken before they

were made parties to the suit. The Bryants were made parties just before the final submission of the case, and no testimony was taken thereafter.

We are of opinion also that Boen has failed to show by a preponderance of the testimony that a partnership existed between himself and Jones. A few days before the complaint was filed Jones wrote Boen a letter asking him to state in writing what his contention was, and in response to this letter Boen answered as follows: "About the first of July, 1934, as you recall, we made the agreement that I was to purchase this timber if possible, and that we would share equally in the profits derived from the manufacture of staves or resale of the timber." The complaint later filed conformed to this theory. The absurdity of this contention is apparent. Boen admitted that during the five or ten minutes conversation in which he says that agreement was arrived at none of the details of the partnership were discussed or agreed upon. Nothing was said about the money on which the partnership would operate. He understood—although it was not discussed—that Jones would procure the mill and the money and would supervise the cutting and hauling of the timber and the manufacture of the staves. Nothing was said about the compensation, if any, Jones would receive for this service except to share in the profits.

It has already been stated that the contract between the Bryants and Jones required Jones to pay the Bryants one-half of the profits. The contract as stated in the letter above copied would have required Jones to pay the other half to Boen. In other words, Jones would have assumed all the financial risks and the burden and responsibility for cutting, hauling and manufacturing staves without hope of prospective profit to himself. We are unable to give credit or weight to such testimony. Boen attempted to explain that neither the allegations of the complaint nor the recitals of the letter expressed the terms of the contract, and that when he wrote "we would share equally in the profits derived from the manufacture of the staves or the resale of the timber," he in-

tended and meant to say that they were to share equally the profits arising from the increased stumpage value of the timber, to be paid as it was manufactured into staves. That an experienced stave man, such as Boen was, who knew what was meant by the phrase ''manufacture of staves,'' should have intended, by the use of that phrase, to refer to stumpage value, is testimony which carries no conviction.

It is impossible to reconcile the testimony of Jones and Boen. They are equally interested in the effect to be given their testimony. We must accept the testimony of one and reject that of the other. In addition to the facts already stated, there are other facts which lead us to the conclusion that Boen failed to establish his case by a preponderance of the testimony. There was no writing of any kind corroborating the testimony of Boen except his own letter above referred to, which was written after the controversy had arisen. The timber had then all been purchased and the lawsuit was in the offing. There is no other corroboration of the testimony of Boen except that of Buck Morrison, who was county surveyor in the Missouri county where the timber was located and who was also engaged in the real estate business.

Morrison testified that he heard a conversation between Jones and Boen, in which Jones admitted making the contract referred to in Boen's letter as above copied. He could not be shaken from that definite statement. He was asked the specific question if it were not stated that Boen's interest was in the value of the timber at the stump; and he answered that it was not. This testimony contradicts that of both Jones and Boen as contained in their depositions which were read at the trial.

This testimony of Morrison was further contradicted by that of G. W. Rogers, a Missouri attorney who had been employed in the examination of the titles to the land on which the timber had been bought. Rogers testified that Morrison told him he had never heard either Boen or Jones make any statement regarding their business relationship. Seven persons from whom Boen purchased timber, or with whom he negotiated, testified that

Boen had told them at different times and places that he was one of several persons engaged by the Jones Stave Company in purchasing timber, and stated in effect that he had no other interest in it. There were other persons engaged in buying timber for the Jones Stave Company, and it was they—and not Boen—who purchased the larger part of the timber bought by the Jones Stave Company. Boen testified that his partnership interest extended only to the timber which he himself had purchased.

The decree must, therefore, be reversed as contrary to the preponderance of the testimony. The fact remains, however, that Boen earned some compensation. The testimony is sharply conflicting as to the number of days devoted to this employment by Boen. His purchases extended over a period of about six months. Boen stated that he devoted about 105 days to that employment. This statement is highly improbable, as during the entire six months Boen was working at an all-time job, and Jones testified that Boen inspected and purchased timber only when he could get away from his regular job and during his furlough, which lasted only one week. There are other circumstances in the case which have been carefully considered, but which do not, in our opinion, furnish any corroboration of Boen's testimony. There is the same conflict as to the expenses incurred by Boen as there was as to the time devoted to his employment. There were trips made by Boen in his own car which he made at his own expense. The timber bought or inspected was at an average distance from Harrison of about 85 miles, and Jones testified that Boen did not devote more than twenty or thirty days to this employment. Other trips were made by Boen in Jones' car, and some in company with Jones, on which occasions the expenses were paid by Jones. Boen admits having been paid $490, but stated this money was advanced as expenses or on account of his prospective profits. Jones testified that this was as much as the services were reasonably worth and as much as he owed.

Having accepted as true the version of Jones—and not that of Boen—as to their relationship, we accept also Jones' testimony as to the compensation.

The decree will, therefore, be reversed, and the cause will be dismissed.