VAN BIBBER *v.* STRONG.

4-6670                                                   160 S. W. 2d 861

Opinion delivered March 30, 1942.

*T. J. Crowder, Claude F. Cooper* and *Frank C. Douglas,* for appellant.

*Wils Davis, Z. B. Harrison* and *Reid & Evrard,* for appellee.

GRIFFIN SMITH, C. J.  Judgments aggregating $2,-397.10 were rendered in favor of four plaintiffs and an intervener in consequence of a collision on Highway 63 December 28, 1939.  A truck belonging to T. H. Van Bibber was in charge of S. D. Hooper when the injuries and damage were sustained.

For reversal four assignments are urged:  (1) The court erred in instructing that Van Bibber and Hooper were partners.  (2) Appellees contributed to their own

hurt. (3) The intervener was guilty of contributory negligence, and there was no substantial evidence to sustain the verdict in his favor. (4) The theory upon which liability was predicated was changed during trial.

John Strong and three others [1] were driving in a car owned by C. M. Massey, with Strong at the wheel. All four had been duck hunting. Appellant's truck, with trailer attached, was parked on the paved highway after dark. Because of a defective fuseplug, headlights failed. Hooper, the driver, testified that he proceeded about 300 yards, then stopped. Rain had been falling and highway "shoulders" were muddy and dangerous. Flares were locked in a compartment, but the key was not available. While Hooper was stooped under the cowl attempting to reconnect the lighting system, Massey's car struck the rear of the trailer. As Hooper extricated himself, a northbound automobile driven by Tygard hit the Massey car.[2]

Hooper, a citizen of Memphis when trial was had, testified he formerly resided in Blytheville, and had been employed by Van Bibber. The witness says he "just happened" by Van Bibber's store on Main street in Blytheville, and in the course of a conversation Van Bibber remarked that his truck was not in use. An oral agreement resulted whereby Hooper took the truck for the purpose of transporting commodities he might buy and sell. Van Bibber agreed to finance the undertaking. when Hooper "first got the truck," and any profits remaining after payment of expenses were to be equally divided. There is the statement by Hooper:—"I was to handle the truck, drive it, look after it, and then my compensation was to be half of the profits."

The night of the collision Hooper had acquired a load of corn. It had been bought, as the witness testified,

[1] Plaintiffs were John Strong, who was awarded $500; C. M. Massey, whose judgment was for $1,750; William Hilderbrand and F. G. Philyaw, who were adjudged $25 each, and the intervener, J. W. Tygard, who was awarded $97.10 on an allegation that his automobile was damaged $150, and that personal injuries should be compensated to the extent of $500.

[2] It was stipulated that damage to Tygard's car was $97. There is no evidence showing why Tygard did not see the parked truck. He was driving, but did not testify.

"on my own." At the point where the truck lights failed, the highway was straight, "with nothing to obscure the view for a mile or more." Varying the language used in explaining his relationship with Van Bibber, Hooper testified on direct examination that all expenses incident to operation of the truck were to be paid from profits, "and I was to get half for my work, and [Van Bibber] was to get half of the profits that were left."

Following the collision Hooper talked with Van Bibber. The latter had prepared a bill of sale, showing purchase of truck and trailer by Hooper for $525. Van Bibber at the time remarked that there might be some trouble on account of the collision. The agreement was signed by Hooper. This occurred, witness thought, December 29. The bill of sale was dated December 25. Hooper testified that when he noticed the date he told Van Bibber "it was not a fair deal"; whereupon, Van Bibber put the paper in his cash drawer and said "there will not be anything to do about it."

W. W. Hilderbrand, one of the appellees, testified that he, Strong, Massey, and Philyaw, had been on a drainage ditch hunting ducks. The party stopped at Marked Tree for supper. Witness and Philyaw were in the back seat. Massey was in front with Strong, the driver. At Marked Tree witness took a drink, but none of the others did. Witness was sleeping when the collision occurred, and was rendered unconscious by the impact.

Strong's version of the transaction was that he was driving at about forty miles per hour when "the truck just flared up in front of me." Massey shouted, "Look out, John." That was the last Strong remembered. He was in a hospital six weeks, and was unable to work for six months. On cross-examination Strong said he did not see the truck-trailer "until I got to the very back of it." Another car was approaching from the southeast.[3] The car Strong was driving had headlights of sufficient power to project a beam 300 feet. Tygard's car struck

[3] This was the Tygard car. Strong saw the headlights before he observed the parked truck.

the left rear fender of the Massey-Strong car. Hooper conceded that ten or fifteen minutes may have elapsed between the time his headlights failed and the time he was struck. A boy named ''Jack'' was with Hooper. When the lights failed Jack got an electric torch, but ''about this time the Strong car struck us.''

Massey believed that when he warned Strong with the exclamation, ''Look out, John,'' they were within 30, 40, or 50 feet of the parked truck. Massey sustained a broken hip and crushed leg. He was unconscious until New Year's Day, and was required to use a plaster of paris cast for four and a half months. Hospital charges and doctor bills were $525. No whiskey was drunk at Marked Tree, although Massey had a bottle of beer. Strong did not drink anything intoxicating, not even beer. At the time of the collision Strong and Massey were ''talking about hunting the next morning.'' The oncoming [Tygard] car ''kind of blinded us,'' said Massey. Strong did not testify his vision was impaired because of the Tygard car. Massey left home about two hours before daylight. The party had hunted all day. Strong was asked to drive because Massey was tired.

F. F. Chilton, employed by Van Bibber, testified that Hooper came to Van Bibber's store and tried to buy the truck. The parties could not then agree, but the following day Hooper ''rented the outfit.'' The question was asked: ''Did . . . Van Bibber rent the truck [to Hooper] and tell him to take it and drive it on his own and split profits on whatever he made after the expenses were taken out?'' The answer was: ''As far as I know, the deal was made that way.'' On cross-examination he testified:—''Hooper was to buy the corn. He was to buy all the corn and operate the truck and give Van Bibber half of the profits. Van Bibber sent me along to check up on Hooper and see that he paid [Van Bibber] his part of the profits.''

Chilton further testified that the corn bought December 28 was purchased by Hooper with his own money. He was in the truck with Hooper, trying to help repair the light circuit when the collision occurred. The Massey-Strong car struck them ''one or two min-

utes" after the truck stopped. When the truck stopped, the Massey-Strong car was up the road about a mile.

E. L. Hamrich testified he was employed at Williams' cafe in Marked Tree. "These gentlemen," (referring to Massey, Strong, Hilderbrand, and Philyaw) "were in the cafe. They sent out for a pint of White Horse liquor, and all drank. They became unruly and the night policeman was sent for, but the party left before the officer arrived. Several bottles of 7-Up were sold, to be drunk with the whiskey. All had glasses." Witness waited on the table. He declined to say any of the guests was drunk. Strong and Hilderbrand, being recalled, denied purchasing liquor, and testified that a young lady waited on their table. They had never seen Hamrich.

The jury was instructed that Hooper and Van Bibber "were partners in the eyes of the law to the extent that Van Bibber would be liable for the negligence of Hooper."

The complaint states a cause of action under the doctrine of *respondeat superior*. It was alleged that Hooper was the agent, servant, and employe of Van Bibber.

There are instances, of course, in which one operating a truck belonging to another (in consequence of a contract whereby the owner's compensation came from a percentage of net profits) would not be a partner with the operator. But that is not the case before us. Hooper and Chilton do not testify in the same words, nor do they explain the relationship in its minutest details. Effect of what they say, however, is substantially the same, and shows that Van Bibber agreed with Hooper that the truck might be used for mutual benefit of the two. In *Stone* v. *Riggs,* 163 Ark. 211, 259 S. W. 412, it was held that where one is only interested in the profits of a business as a measure of compensation for services rendered by himself, or for the rent or hire of property furnished him in prosecution of the business, he is not a partner. The law of partnership is a branch of the law of agency. One partner acts for himself and as the

implied agent of the other, within the scope of the partnership business. *Watkins* v. *Moore,* 178 Ark. 350, 10 S. W. 2d 850.

Our procedure treats a complaint as amended to conform to the testimony, and if effect of evidence in a particular case is not such as to deprive the defendant of a substantive right, necessitating a mistrial and allowance of time to meet the new issue, the fact that testimony was not responsive to the pleadings will be treated as having been waived. In the case at bar there was no objection. Van Bibber chose to dispense with services of an attorney and conducted his own defense. The trial court, recognizing attending disadvantages, was careful to preserve all of the defendant's rights where this could be done without unjustly penalizing the plaintiffs, who were represented by counsel.

Having heard all the testimony, the court instructed on the theory that a partnership existed. This was not error. The evidence and inferences fairly deducible are to the effect that operating expenses and maintenance of the truck were to be deducted. The last sentence in Chilton's testimony is that "Van Bibber sent me along to check up on Hooper and see that he paid [Van Bibber] his part of the profits." The word "profits" is conspicuous. Other language is employed by Chilton, but his ultimate declaration was that Van Bibber's interest was half of the net profits; and it should be remembered that Van Bibber supplied funds with which to make purchases, although there is testimony that Hooper paid for the corn being transported at the time the collision occurred.

The most difficult problem is that of determining whether, as a matter of law, appellees were guilty of contributory negligence. Their car's headlights threw a beam of light approximately 300 feet, but neither Strong nor Massey (who were in the front seat) saw the truck-trailer until they were within "30 or 40 or 50 feet of it." No one has a right, absolutely, to assume that obstructions will not be encountered on highways.

There are circumstances in which stopping on the paved surface cannot be avoided, and it may be impos-

sible to place flares or to otherwise warn an approaching car when headlights have suddenly ceased to function. Common experience teaches us that accidents will occur, and the driver of an automobile is not licensed to engage in conversation with a companion to the extent of distraction, or to participate in other conduct contributing to inattention. Conversely, we know it is necessary at times to momentarily glance to the right or to the left while driving, and that one's vigilance may thus be arrested, to his injury.

The Van Bibber-Hooper truck occupied almost half the highway width. Hooper says it may have been immobile ten or fifteen minutes. An available flashlight was not used. Hooper's conduct was negligent, and Strong's actions are dangerously near the border line where contributory negligence as a matter of law should come to appellant's aid. Doubt, however, is resolved in favor of the verdict, and the questions of fact as found by the jury will not be disturbed.

Affirmed.